MILLER, Respondent, v. TOWN OF CANTON, Appellant.

St. Louis Court of Appeals, March 5, 1907.

1. **EVIDENCE: Municipal Corporations: Defective Sidewalk.** In an action against a city for damages to plaintiff caused by falling on a wooden sidewalk, evidence that the stringers upon which the boards were laid were rotten six weeks after the accident was admissible as tending to show their condition at the time of the accident.

2. ——: ——: ——: **Reconstruction.** It was inadmissible in such case to show that the walk at the place of the accident was reconstructed by the city, but where the evidence of the condition of the stringers incidentally involved the fact that the walk was being reconstructed so that fact necessarily got before the jury, though the trial court held it inadmissible, it was not reversible error.

3. ———: **Secondary Evidence: Bill of Exceptions.** Where a deposition has been copied and preserved in the bill of exceptions, such record copy may be read in evidence on showing the loss of the original deposition.

4. ———: ———: ———: **Loss of Original.** Where the copy of a deposition contained in a bill of exceptions was offered in evidence and no testimony offered showing the loss of the original except the unsworn statement of counsel, and where the objection to the introduction of the copy was not that there was no sworn testimony of the loss of the original, but for reasons which could have been urged as well against the original, there was no error in admitting it.

5. **DAMAGES: Personal Injuries: Excessive Verdict.** In an action for personal injuries where the evidence showed that plaintiff's foot was injured so that at the time of the trial four years afterwards she was still lame with a probability of her lameness being permanent, that she had suffered a great deal of pain for several weeks after the accident and her nervous system was greatly impaired, a verdict for $2,500 was not so excessive that the appellate court should interfere with it.

Appeal from Hannibal Court of Common Pleas.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*F. L. Schofield, Arthur Hilbert* and *W. M. Hilbert* for appellant.

(1)   The court erred in admitting evidence tending to show the defective condition of the sidewalk and its entire reconstruction some six weeks after the time of the accident in question. Bailey v. Kansas City, 189 Mo. 503; Mitchell v. Plattsburg, 33 Mo. App. 555; Brennen v. St. Louis, 92 Mo. 482; Alcorn v. Railroad, 108 Mo. 81.   Evidence of subsequent repairs made by a city is only admissible for the purpose of showing that the street was subject to the jurisdiction of the city and was recognized as a street.   (2)   The statute provides that evidence preserved in a bill of exceptions may be used, "In the same manner and with like effect as if

such testimony had been preserved in a deposition in said cause." R. S. 1899, secs. 2904, 3149. This necessary preliminary proof was wholly wanting in the case at bar.

*George W. Whitecotton, O. C. Clay, A. Frank Haney* and *Earl M. Pirkey* for respondent.

(1) The court committed no error in admitting evidence of the defective condition of the walk subsequent to the time of the accident. Bailey v. Kansas City, 189 Mo. 512; Richardson v. Marceline, 73 Mo. App. 364; Norton v. Kramer, 180 Mo. 543. (2) As to the claim of appellant that there was a want of preliminary proof that the original deposition of Dr. Miller was lost or destroyed, reference to the record will show that the trial court fully satisfied itself on that point. Ivy v. Yancey, 129 Mo. 508; Smiley v. Cockrell, 92 Mo. 113. (3) "In no case will a verdict be set aside by this court because excessive or insufficient, unless it be such as bears evident marks of prejudice, passion or corruption." Leahy v. Davis, 121 Mo. 234; Griffith v. Railroad, 98 Mo. 176; Merrill v. St. Louis, 12 Mo. App. 469.

GOODE, J.—The plaintiff received an injury by falling on a sidewalk in the town of Canton, about nine o'clock in the evening of May 31, 1902, and instituted this action to recover damages. When the accident happened plaintiff was with her husband. The sidewalk was composed of boards laid across three stringers, the ends of the boards projecting beyond the outside stringers. Plaintiff's husband stepped on the end of a loose board, thereby causing the other end to fly up and catch plaintiff's left foot as she was in the act of stepping. Her foot ran into the opening left by the raising of the board and threw her on the walk. The injury received was painful and promises to be permanent; for at the second trial of the action, which began January 17, 1906,

plaintiff was still disabled in consequence of the casualty. As the point is made that the damages are excessive, the question of the extent of her injury will be adverted to and more fully considered. The verdict was for $2,500. About the middle of July, that is to say, six weeks after the accident, the board walk on which plaintiff fell was taken up by the city and a new one laid. This action of the city exposed the stringers to view and plaintiff proved by several witnesses who saw them, that at that time they were too rotten to be used in the reconstruction of the walk. It is earnestly insisted that the court erred in permitting testimony that the walk was reconstructed, repaired, or a new one laid; which ever was done, for the witnesses used all these terms. Counsel for defendant cite Bailey v. Kansas City, 189 Mo. 503, 87 S. W. 1182, and other cases, in support of the proposition that such evidence was inadmissible as tending to prove an admission by the city that the walk was not reasonably safe when plaintiff fell. But the testimony was not let in as proof of prior neglect of duty by the city, nor was plaintiff permitted to show a new walk was laid. Objections were made from time to time, when testimony was offered by the plaintiff to show the stringers were rotten at the time the walk was torn up, on the ground that evidence of reconstruction or repairs was being given; and the court always ruled that it was incompetent to show repairs were made or the walk reconstructed, but ruled, too, that it was competent to show the condition of the stringers by any witness who saw them at the time they were torn up. If the stringers were thoroughly rotten six weeks after the accident, they could not have so deteriorated had they been in a sound state when the accident happened. At least it is very improbable they would have done so, and hence their condition in the middle of July was a fact proper to prove, in order to show they were rotten the last of May and would not hold the nails driven into

them in order to fasten down the boards of the walk.
The admission of this kind of evidence was expressly
sanctioned in the Bailey case. Now it was found to be
impossible while receiving the competent testimony, to
prevent the witnesses from speaking incidently of the
reconstruction of the walk. But in every instance when
defendant's counsel objected to any statement let fall
which tended to show the walk was reconstructed, the
statement was ruled out by the court. We think no
error occurred in this connection, though it is apparent
that the fact got before the jury that the walk was re-
built. In truth counsel for defendant had as much to
do with proving this fact as counsel for plaintiff had.
Neither intended to prove it, but the witnesses would
drop remarks about the walk being repaired. During
the cross-examination of William Mack, a witness for
the plaintiff, in an attempt to induce the witness to say
the walk remained in bad order no later than in April
prior to the accident and was then repaired, defendant's
counsel elicited the answer that it was in the same state
until it was removed and a new one put down—an an-
swer which referred to the construction in July. No
effort was made to have this answer stricken out as not
responsive, and others like it were given occasionally.
The court's rulings on the evidence offered as to the con-
dition of the stringers at the time the walk was torn up,
were proper, and the inadvertent allusions of the wit-
nesses to the fact that a new walk was laid, ought not to
work a reversal of the judgment. We have attentively
perused the entire transcript and do not agree with de-
fendant's counsel that the counsel for plaintiff artfully
sought to introduce proof that the walk had been recon-
structed, under the guise of proving the condition of the
stringers when it was removed.

At the first trial of this case the deposition of Dr.
H. B. Miller, a resident of St. Louis, was put in evi-
dence; and when the case was appealed this deposition

was copied into the bill of exceptions. The first trial occurred in the city of Canton, the county seat of Lewis county; but after the cause was reversed and remanded, a change of venue was awarded to the Court of Common Pleas at Hannibal, Missouri, and there the trial occurred from which the present appeal was prosecuted. When it was desired to introduce Dr. Miller's deposition at the second trial, it could not be found among the papers of the case on file in the Court of Common Pleas, and the copy of the deposition contained in the bill of exceptions taken on the first appeal was offered and admitted in lieu of the deposition itself. Error is assigned on account of the reception of this record of the deposition, on the score that said record was secondary evidence and no basis was laid for its admission. The statutes provide that any competent evidence which shall be preserved in a bill of exceptions, may be thereafter used in the same manner and with like effect as if the testimony had been preserved in a deposition in the cause. [R. S. 1899, sec. 3149.] This statute would let in the record copy of the deposition; at least if it were shown the original document could not be procured. And, indeed, any proved copy of a deposition is admissible at common law if the original is lost. [Burton v. Driggs, 20 Wall. 133; Weeks, Depositions, sec. 462.] But it is argued that neither at common law nor under the statute, was the record copy of Dr. Miller's deposition competent until it was proved the original was not available, and that this proof was not made. The argument is that the deposition itself, if procurable, like the presence of the witness in court, precluded the use of the bill of exceptions to show what was said by the witness. No sworn testimony was taken touching the absence of the original deposition from the files, but counsel for plantiff, in open court, stated that they had made diligent search for it and that it was not to be found among the papers or in the court; and one of the attorneys stated

further that he had searched diligently for it and it was not at Canton. The objections to the copy and the reasons for objecting, as stated by defendant's counsel, were as follows:

"There might be objections I could raise to portions of it that I couldn't raise by this transcript. It would not show. We could make objections now probably that we didn't make before to some portions of it. If they are going to offer the transcript instead of the deposition, I insist they place themselves in proper light before the court to do it.

"They haven't undertaken to account for the deposition. I object to the introduction of the transcript because the deposition itself is the best evidence and the proper evidence, and because there has been no foundation laid for the introduction of the evidence as preserved in the transcript; and because the witness himself is within the jurisdiction of the court."

In the testimony of Dr. Miller his residence was stated to be in St. Louis, and not in the county where the case was on trial. This statement in the deposition was sufficient to make the original admissible. [Sullivan v. Railroad, 97 Mo. 113, 121, 10 S. W. 852.] The only theory on which it can be said that no proof was adduced of the loss of the original is the failure to swear the attorneys who stated they had made diligent search for it both at Hannibal and Canton. But it is clear that defendant's counsel were not insisting that sworn testimony be received from them regarding their search, instead of their statement. Granting for argument's sake that the copy contained in the bill of exceptions was not admissible if the original could be procured, the judgment ought not to be reversed, in view of the objections that were made to the admission of the copy, merely because of the form of the proof regarding the loss of the original. Defendant's counsel gave as their reason for wanting the deposition instead of the

copy, that they could object to portions of the testimony not theretofore objected to if the deposition itself was offered. It is obvious that any additional objection could have been urged as well if the testimony of Dr. Miller was to be introduced by reading from the bill of exceptions, as if the deposition was read. The mode in which this assignment of error is presented shows it is purely technical. The ruling complained of did not affect the result, for it was never claimed that the copy of the deposition varied in the least from the original.

It is strongly contended that the damages awarded were excessive, but we cannot yield assent to this proposition. The board which caught plaintiff's foot fell on her instep and the trip threw her violently on the walk. Her foot was caught under the loose board and sustained a harsh wrench, while at the same time her knee and shin were bruised and abrased. The serious injury, though, was to the foot; and it was of such a nature as to force plaintiff to walk on the outside of the sole of her left foot, and to render it impossible for her to plant her foot firmly while walking. That is to say, the inside of the sole does not press down on the surface on which plaintiff walks. The great toe, instead of occupying its normal position, stands upward and plaintiff is unable to control it by the muscles.

There is an abnormal growth of bone on the instep of the foot and it had continued there from the time of the accident to the time of the second trial, an interval of about four years; and at the end of the interval it was larger than before. There is testimony to show plaintiff still limps, and that, on account of having to walk in a strained and unnatural position, she suffers from soreness in the muscles and leaders of the left side of her body and her movements are unduly laborious. She was a healthy woman prior to the accident, but has become nervous in consequence of it. These distressing conditions will probably be permanent, according to the

testimony of physicians. In addition to them plaintiff suffered a great deal of pain for several weeks and long after the accident felt pain to such a degree that she could hardly sleep. For several weeks, too, she was compelled to use a crutch and afterwards for some time, a cane. There was contervailing evidence regarding these matters for the jury to weigh; we are stating the facts as testified to by plaintiff's witnesses. Those witnesses were numerous and appear to have been intelligent and credible. Several physician's of good qualifications gave testimony indicating that plaintiff would be crippled through life. It is undeniable that she was still suffering from the injury four years after it was received. In view of such facts we will not interfere with the verdict on the ground of an excessive award af damages, and are the more persuaded that this decision is right because the learned judge who heard the testimony did not set aside the jury's award.

Complaint is made of two instructions given at the request of plaintiff in regard to the duties of the mayor and street committee of the city of Canton. Suffice to say as to these instructions they were approved on the former appeal and became the law of the case. [Chapman v. Railroad, 146 Mo. 481, 48 S. W. 646.]

Error is assigned because the record shows various answers to questions in depositions were read to the jury, although said answers had been ruled out by the court as inadmissible. This assignment will be illustrated by quoting from the deposition of Mrs. Edith Eckert as contained in the bill of exceptions.

"How do you know that it (the board) came loose when you stepped on it—what effect did it have?

"Object to same on the part of defendant because it is incompetent, irrelevant and immaterial. Objection renewed. Objection by the court sustained, to which ruling of the court plaintiff then and there at the time excepted.

"A.   My daughter stumbled."

It is contended that the above excerpt shows the excluded answer was in fact read to the jury, and that the same is true of many answers similarly excluded. Counsel for defendant do not assert that such answers were read, but merely that the conclusion to be drawn from the bill of exceptions is that they were. Plaintiff's counsel say they were not. The record does not say they were and we think the natural inference is to the contrary. The court would not let numerous portions of depositions that had been excluded, be read in evidence. However, suffice to say that if they were read after the court had ruled them out, defendant has preserved no exception to the reading of them.

Other points are pressed on our attention, chiefly in relation to rulings on evidence. We have not omitted to consider all these alleged errors in the light thrown on them by a study of the full record, and in our opinion none of them is of substantial merit.

The judgment is affirmed.   All concur.