ANNA WILLIS, Respondent, v. CITY OF BROWNING, Appellant.

Kansas City Court of Appeals, February 5, 1912.

**MUNICIPAL CORPORATIONS: Exhibit of Ankle: Demonstration: Walking: Crutches.** It is proper to permit a plaintiff who was injured on a street crossing, to exhibit her ankle to the jury that they might see its condition. But it was improper to allow her to demonstrate to the jury how she could walk about the court room with her crutches and without them.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis*, Judge.

REVERSED AND REMANDED.

*S. J. Miller, F. S. Hudson* and *E. B. Fields* for appellant.

*John W. Clapp, John H. Taylor, Paul D. Kitt* and *D. M. Wilson* for respondent.

ELLISON, J.—Plaintiff was injured while walking over a board crossing on one of defendant's streets. She charged that the crossing had been negligently maintained, and brought this action for damages. A change of venue was taken from Linn to Livingston county where she obtained a judgment in the trial court.

The facts, as claimed to be by either side to the controversy, were brought out in much detail. The verdict of the jury relieves us of the necessity for discussing, or, in many instances, even referring to these. It is of no consequence to us, in viewing the case from the standpoint of an appellate tribunal, whether the crossing was composed of a greater or less number of boards, or whether these boards were six feet or twelve feet long. The fact remains that plaintiff was hurt by one of the boards being in a decayed condition and breaking with her weight and that her foot and leg went through to the bottom of a drain, about fifteen inches deep, throwing her down and inflicting painful injuries. There was evidence tending to show that the crossing had been in use for five or six years and that plaintiff used it, sometimes daily, for this period. But notwithstanding her knowledge, the evidence shows no ground whatever justifying a charge of contributory negligence as a matter of law. On the face of it, the crossing looked sufficiently safe to induce any ordinarily prudent person to attempt to go over it. But, from that fact it does not follow that the city did not, or could not, know

of the defect. In the matter of a defective street there is more owing. by the city to the pedestrian than by the latter to the former. For the city invites the pedestrian to use the street, and that implies an assurance that it may be done with reasonable safety. So we find there was sufficient evidence, connected with the circumstances, to justify a verdict that there was a defect and that the city knew it, or should have known it.

It appeared in evidence that shortly after plaintiff's injury the city took out the board crossing and substituted one made of cement. As evidence of culpability on the part of the city, such evidence is held to be improper. [Bailey v. Kansas City, 189 Mo. 503; Woods v. Poplar Bluff, 136 Mo. App. 155; Miller v. Canton, 123 Mo. App. 325.] But where it is admitted for some other purpose it may be proper. Thus, in this case, a model of the old crossing was produced before the jury; and in order to show that it was not taken from the crossing, but was gotten up from memory, it was shown that when made the old crossing had been long before torn out and the new one put in. Besides, most of the evidence on that head was not objected to, and that part to which objection was made, the court announced would only be admitted for a specific purpose and if defendant would ask it, the court would include an instruction to that effect with others the parties might ask. The defendant failed to do so.

The court permitted plaintiff to exhibit her ankle to the jury as evidence of its condition, etc. This was proper. [Haynes v. Trenton, 123 Mo. 326, 335; Orscheln v. Scott, 90 Mo. App. 352, 356, 366.] But a demonstration was permitted after such exhibition. Plaintiff was allowed, over defendant's objection, to get up and show how she said she could walk with and without her crutches. Counsel said to her: "I wish you would take your crutches, Miss Willis, and step

on the floor there and show the jury, the best you can, how you can move around the house" (the court room). A demonstration followed; then counsel said: "Let me take your crutches, and (you) show the jury the best you can move around the house" (the court room). And another demonstration followed. This was going too far. A defendant in an action for damages for personal injury suffers many unavoidable disadvantages, which makes it only the more necessary to shield him from those which may be avoided. The maimed, the widow and the orphan draw strongly enough on the hearts of jurymen without affirmative effort to arouse sympathy. Human nature needs no artificial aid in this respect. Would it be allowable to strike a sensitive wound in order that the jury might hear the plaintiff scream with pain? What restraint would there be on opportunity for simulated evidence? Counsel have not cited us to a like case in this state, but similar acts have been held to be improper elsewhere. [Hatfield v. Ry. Co., 33 Minn. 130; Felsch v. Babb, 72 Neb. 736.] We, of course, cannot even approximately measure in dollars what effect this improper proceeding had with the jury, and therefore cannot order a remittitur. But that it had some substantial effect we have a right to suppose, especially in view of the fact that the verdict was for five thousand dollars.

The judgment is reversed and the cause remanded. All concur.