LOUISE ARATA, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 3, 1912.

1. STREET RAILWAYS: Personal Injury: Pleading: Instructions: Broadening Issues: Specific Negligence. A petition for personal injuries under the humanitarian rule, specifically charged the acts which the defendant street car company negligently failed to perform in order to save plaintiff, after discovering her peril, were failing to stop, or slow the speed of the car. But an instruction for plaintiff was given allowing her to recover for the failure to do anything which might have saved her. This was *held* to be a broadening of the issues pleaded, and therefore erroneous.

2. ———: ———: ———: Instructions: Contradictory. Where instructions erroneously broadening the issues made by the pleadings, and directing a verdict, are given for plaintiff, they are not cured by contradictory instructions on behalf of defendant likewise directing a verdict.

3. ———: ———: Physician Expert: History of Case: Past Life: Opinion. A physician was appointed by the court to examine the plaintiff, who alleged she was injured by being run against by a street car. He did so and thought it necessary to a correct opinion that he should know her past history. She answered she helped her mother at washing "like a good girl." In recent years she had led a demoralized, immoral and dissipated life. It was. *held* that since the doctor thought it necessary to know her history in order to make up his mind, he should have it, and that it was therefore improper to exclude such information.

Appeal from Jackson Circuit Court.—*Hon. R. M. Middlebrook*, Judge.

REVERSED AND REMANDED.

*John H. Lucas* and *Chas. N. Sadler* for appellant.

*Langsdale & Howell* and *E. R. Morrison* for respondent.

ELLISON, J.—Plaintiff was injured by one of defendant's street cars striking her as she was crossing one of the streets in Kansas City. She brought this action for damages and recovered judgment in the trial court.

The action is founded on the humanitarian rule. The petition charges specific negligence in failing, after seeing plaintiff's peril, to stop the car, or to slow it down, and thereby avoid injuring her. There was sufficient evidence tending to support the charge to permit the question being submitted to the jury, and we think defendant's demurrer was properly overruled.

But there was given for plaintiff an instruction which so broadened the specific negligence charged as to permit plaintiff to recover if defendant could have prevented the injury by any effort of ordinary care, no matter what it might be. The petition specified that defendant's neglect was in not stopping the car, or slowing it down, so that plaintiff might have escaped, and only that issue should have been submitted. [Beave v. Transit Co., 212 Mo. 331; Detrich v. Met. St. Ry. Co., 143 Mo. App. 176; Conway v. Met. St. Ry. Co., 161 Mo. App. 501, 143 S. W. 516.]

This fundamental rule was of especial importance in this case for the reason that counsel, in argument, took the liberty which the broad terms of the instruc-

tion allowed him by saying to the jury that defendant should have rung the bell in order to have avoided the accident. When counsel was at this part of his argument, defendant claimed he was arguing that plaintiff, *under the court's instruction,* could recover for a failure to ring the bell or give warning, and objected to it. After colloquy between them, counsel for plaintiff said he would withdraw the language. Then counsel again began arguing to the same effect, and again counsel for defendant objected and asked that the jury be discharged. The court refused to do this and remarked to the jury that counsel had withdrawn his argument about the bell. Then counsel for plaintiff stated that he had not argued that "they should recover because they did not ring the bell; but I said that was one of the things they should have done to avoid the accident after she got in a position of peril." But even that was highly improper.

It is apparent that the jury were thus put in mind of a matter not pleaded which they would be quick to hold against defendant and which they were at liberty to do under the instruction. The pleading in Ellis v. Met. St. Ry. Co., 234 Mo. 657, cited by plaintiff, was so unlike the petition in controversy as to render the case inapplicable to this. Nor do we think the other cases affect it. The fact remains that plaintiff's improper instruction, together with the argument of counsel (although withdrawn) put defendant at an unfair disadvantage. The instruction was particularly unfortunate and harmful, coming as it did after counsel had insisted that defendant could have saved plaintiff by ringing the bell.

Nor do we think the fact that correct instructions were given for defendant can cure the harm we have mentioned. Plaintiff's instruction submits its broad hypothesis and *directs a verdict* thereon. At least they were contradictory, each directing a ver-

dict, and that is a fault which is thought to cause such uncertainty and confusion as to justify a reversal.

We discover no fault with the question asked the physician as to meningitis, resulting. We think this was a phase of the case which naturally might result from the injuries charged in the petition. And so as to the ankle. We cannot say what form questions to experts will take at another trial. But that matter has been so often discussed of late by the Supreme Court and the Courts of Appeals as to leave further remark unnecessary.

It was shown that plaintiff formerly—within a few years past—had led a life of the most hurtful and extreme immorality, degradation and dissipation. Dr. Hannawalt, a physician appointed by the court, was examined as an expert on the condition of plaintiff in reference to her injuries and the situation in which it would leave her, including the disturbance of her nervous system. He examined her and asked her for her past history. She said she was a "washerwoman and helped her mother at home like a good girl." The court refused to allow the witness to be asked whether she informed him of her demoralizing life. The record on this subject shows the court considered that should have no place in forming the doctor's opinion. We think this was error. The doctor, *himself*, had thought it necessary to ask her for her history, so that he might have it in mind in forming opinions, and we think he should have been allowed to state how his opinion would be affected, if at all, by a truthful history. If he could not form a correct opinion without a correct history, it is evident he should have it.

The judgment will be reversed and the cause remanded. All concur.