HARRY MEYER, RESPONDENT, v. WALTER JOHNSON AND C. F. JOHNSON, DOING BUSINESS UNDER THE FIRM NAME OF JOHNSON & SONS, APPELLANTS.—30 S. W. (2d) 641.

Springfield Court of Appeals. July 29, 1930.

*I. W. Mayfield & Son* and *Phil M. Donnelly* for appellants.

566

*L. W. Mayfield* and *A. W. Curry* for respondent.

COX, P. J.—Action for personal injury. Plaintiff recovered $5000 and defendants appealed.

Defendants were road contractors and were bringing to proper grade a portion of a state highway some distance north of Lebanon, Missouri. Plaintiff was employed by defendants as a common laborer and was injured while engaged with another employee of defendants in making holes through hard-pan into which sticks of dynamite were to be placed and exploded. These holes were made by driving iron bars, called spuds, down through the hard-pan and then pulling them out. Plaintiff charges that while assisting in drawing these bars out after they had been driven into the ground he was hurt.

The petition alleges the employment of plaintiff by defendants and then alleges "That it was plaintiff's duty as such employee of defendants, with the assistance of another employee of defendants, to drive rods of steel into the soil or hard-pan and after doing so to remove said bar of steel so that a hole would thus be made in the earth in which powder might be placed for the purpose of blasting

the earth loose so that it might be more readily used. . . . That the usual and ordinary method of pulling a bar of steel from the earth after it had been driven into the ground was to wrap the said bar with a chain and through said chain place a pry or bar to be used as a lever and with which the bar of steel could be safety and readily pulled from the soil without unnecessary strain upon, and without damage to, those who were using and operating the same. . . . '' That he was directed by one of the defendants in charge of said construction to pull from the soil and hard-pan a steel bar which had been driven therein to a depth of about five feet. That his foreman with whom he was working was directed by the defendant to use a stenson wrench and to twist and to turn the said bar with the wrench while the plaintiff, at the same time, was directed by the defendant to pull on the said bar with his hands until it would be removed. That plaintiff complained to said defendants of the excessive strain which such an operation would throw upon him and requested that they be permitted to use a chain and lever. That defendant refused that request and required plaintiff to pull the bar without such appliances. That while plaintiff was pulling upon said bar, his helper was twisting and turning said bar with the wrench which placed a great strain on, and twist to, plaintiff's body that caused him to slip and stumble and threw him into such a strain as to cause his abdomen to burst causing what is commonly known as a rupture and wrenched and injured plaintiff's back and spine.'' He then describes the injuries suffered and then charges as follows: ''Plaintiff avers and charges the defendant with the following acts of negligence and carelessness and says that one or more or all of them was the direct and immediate cause of his injuries and damage aforesaid, to-wit:

''(1) That defendants were negligent in not furnishing to the plaintiff a reasonably safe appliance with which to do the work required of him.

''(2) That defendants were negligent in directing plaintiff to perform the work required of him without notifying him of the danger of twisting the bar in question while he was exerting his strength in pulling upon the same.

''(3) That defendants were negligent in directing the bar to be twisted while the plaintiff was pulling thereon.''

The evidence for plaintiff, as far as we deem it necessary to quote, was in substance as follows: ''Up to the time I was injured, we drove three foot spud bars, drove them down and whipped them out with a fourteen pound hammer; whipped them on each side until they could be lifted out easily. On the 9th of June I was put to spudding in a different way. Walter Johnson, one of the defendants . . . started us on the job. . . . He said 'You get your bars and come over here and I will show you how to do. . . .

That is as far down there as you go and he checked the distance, five and two-tenths feet. He said here is the depth line and you drive the other bars here and twist them out. He said don't whip them—that bruises up the bar until you cannot get them out at all. You steady the bar and let Caffey twist. We drove the three-foot bar down and twisted it out. Charley Caffey used the wrench. It was two feet long. . . . On top of the bar was a flat place made. Now, he said, Charley, you take the wrench and you twist and he said to me you steady this so as he twists it around you follow him up and as you twist around it will lift the bar out. We did that with the three-foot bar. After we extracted the three-foot bar we set the six-foot bar in there and drove it down. We drove it five and two-tenths feet. Walter Johnson told us to drive it that depth. When we got the bar down five and two-tenths feet, Charley Caffey put the wrench on it and started backwards and I steadied it.'' There was a flat place at the top of the bar where the wrench was placed and just left enough above the wrench for plaintiff to catch hold of it with his hands. In describing how he was injured he said: ''Charley Caffey was going backward and I would follow him up and it would hit tight. When it would hit tight he would pull hard and when it would pull tight he would loosen his bar and go back and fall down on his legs on the ground and before I could turn loose of it it would twist me inward.'' He then told how this twisting of the bar ruptured him and wrenched his back.

A demurrer to plaintiff's evidence was filed and overruled and that is assigned as error. There were three specific acts of negligence charged as heretofore stated. We find no evidence to sustain the last two of these. We think there was some evidence tending to support the first charge of negligence, to-wit, failure to furnish a reasonably safe appliance with which to do the work. The evidence, however, is not as clear in some respects as it should be. Whether the bar, when it moved suddenly and twisted in plaintiff's hands, moved forward in the same way they were turning it or stopped and turned back the other way is not shown. Whether Mr. Caffey, who had hold of the wrench, loosened his hold of the wrench when he fell down on his legs on the ground is not shown. It is shown that the wrench did not come off the bar but whether Caffey let loose of the wrench or ceased to pull on it at the time the bar twisted and wrenched plaintiff is not shown. What caused Caffey to fall on the ground is left entirely to inference. All these things appear to us to be material and all ought to be shown by the evidence. In the course of the trial, when a certain doctor was on the stand, the plaintiff's counsel asked that the doctor examine plaintiff there in the presence of the jury. This the court permitted to be done over the objection of defendants. Plaintiff's back was bared and the doctor ran his hands and fingers up and down the spine of

plaintiff and plaintiff would give expressions of pain at certain times and plaintiff also himself said he objected to standing there with no one assisting him. This was error and will necessitate a reversal of this judgment. [Willis v. Browning, 161 Mo. App. 461, 143 S. W. 516; Madison Coal Co. v. Altmire, 215 Ky. 283, 284 S. W. 1068.] The Willis case is cited and apparently approved by the Supreme Court in Boyer v. Missouri Pac. R. R., 293 S. W. 386, 388.

It was attempted to show by plaintiff while on the witness stand that the usual manner of lifting spud irons out of the ground was by the use of a lever, block and chain but we do not think plaintiff qualified to testify on that question. If that proof is desired in another trial, the witness by whom it is sought to prove the fact should first show that he is familiar with the general custom and practice of those engaged in that kind of work.

Plaintiff's instruction No. 1 is assailed by defendants. In the first paragraph of this instruction the jury were told that it was the duty of defendants "to use reasonable care to select reasonably safe tools and appliances and if they directed the manner of such work, then such manner so directed by defendants should be reasonably safe for the plaintiff. This is correct as to the care required of defendants in selecting appliances but is erroneous in telling the jury that if defendants directed the manner of doing the work, then they were bound to give directions that would be reasonably safe for the plaintiff. It was their duty to use reasonable care to give directions that would be reasonably safe but they were not insurers of the safety of the manner in which they directed the work to be done.

The second paragraph of this instruction told the jury, in effect, that if they should find that removing the bar with the tools and appliances furnished and in the manner directed was not reasonably safe for plaintiff, then defendants would be guilty of negligence. This was erroneous in not requiring the jury to also find that defendants knew or by the exercise of ordinary care could have known that for plaintiff to have used the appliances furnished in the manner by them directed would not be reasonably safe for plaintiff.

Plaintiff's instruction No. 3 correctly states an abstract proposition of law but could serve no useful purpose in this case and should not have been given.

Plaintiff's instruction on the measure of damages is assailed on the ground that it permits the jury to consider what is called neurasthenia or a neurotic condition in addition to mental anguish, this on the ground that this condition is in and of itself a part of mental suffering. There is evidence that this neurosis or neurotic condition is a disease and if it resulted from the injury, it would be in addition to what is generally understood by the term mental

570

anguish. We do not think that instruction is erroneous under the evidence in this case.

For the errors noted, the judgment will be reversed and the cause remanded. *Bailey* and *Smith, JJ.,* concur.