Lena **GOLDSTEIN**, Plaintiff-Respondent,

v.

Erwin **FENDELMAN**, Defendant-Appellant.

No. 47785.

Supreme Court of Missouri,

Division No. 1.

June 13, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied July 11, 1960.

———◆———

Schwartz, James & Sweet, Harry M. James, St. Louis, for defendant-appellant, Joseph Nessenfeld, St. Louis, of counsel.

Walter S. Berkman, St. Louis, for re-spondent.

HYDE, Judge.

Action for damages for personal injuries sustained when plaintiff was struck by defendant's automobile. Plaintiff had a verdict for $20,000 and defendant has appealed from the judgment entered.

Defendant concedes plaintiff made a submissible case on failure to exercise the highest degree of care to keep a lookout, which was the only ground of negligence submitted. Plaintiff was struck by defendant's car about 5:15 A.M., June 24, 1958, a dark, rainy morning, at the intersection of Delmar and Melville in University City, where she was waiting to board an approaching streetcar. The principal fact issues were whether plaintiff was struck while standing in the safety zone in the street, when defendant passed the streetcar and ran through the safety zone ahead of it, as plaintiff and the streetcar motorman testified; or whether defendant was driving behind the streetcar when plaintiff came from the sidewalk and ran into the side of defendant's right front fender in attempting to get across ahead of defendant's

automobile as defendant testified. Defendant's own testimony at least left in doubt his exercise of the highest degree of care in keeping a lookout.

■ Defendant alleges error in giving Instructions 1, 5 and 6. Instruction 1, submitting plaintiff's theory of recovery, was as follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion in question, the plaintiff, Lena Goldstein, was standing inside the safety zone located on Delmar Avenue at the intersection with Melville Avenue, in University City, Missouri, waiting for an eastbound Delmar street car; and if you further find and believe from the evidence that thereafter the defendant was driving an automobile eastwardly on Delmar Avenue near said safety zone and failed to keep and maintain a careful watch and lookout ahead and laterally to observe plaintiff standing therein, if you so find; and if you further find and believe from the evidence that in so failing, if you so find, the defendant did not exercise the highest degree of care and was negligent; and if you further find and believe from the evidence that as a direct result of such negligence, if you find he was negligent, the defendant drove said automobile into said safety zone and struck the plaintiff and she was directly injured thereby, then your verdict should be in favor of the plaintiff and against the defendant, Erwin Fendelman."

Defendant says this instruction "imposed an absolute duty upon defendant to keep a lookout and observe plaintiff standing in the safety zone," when "the duty to keep a lookout is simply one of exercising the highest degree of care to keep a lookout and to see and know only what could be seen and known by the exercise of the highest degree of care." Defendant further says "the error in imposing this absolute duty is not cured by the subsequent requirement that the jury find that by failing to keep this lookout (absolute and with-

out qualification), the defendant did not exercise the highest degree of care and was negligent, * * * for the obvious reason that the jury was permitted to and would necessarily find that defendant was negligent if he failed to comply with the absolute duty imposed upon him by the instruction"; citing Johnson v. Presley, Mo., 320 S.W.2d 518, 524; Welcome v. Braun, Mo., 319 S.W.2d 586, 588–589; and Toburen v. Carter, Mo., 273 S.W.2d 161, 165. The Johnson case [320 S.W.2d 524] was a humanitarian negligence case in which the main instruction was held to impose on defendant's driver "an absolute duty to keep a lookout and to know what he could have known by such a lookout." (Hypothesizing "that by keeping a lookout * * * could or should have known that plaintiff was in such position of imminent peril"; see also Lay v. McGrane, Mo.Sup., 331 S.W.2d 592, 596.) In the Welcome and Toburen cases, defendants' instructions submitting plaintiffs' contributory negligence, the required findings were "she could have seen the approaching automobile of the defendant if she had looked to the north" (319 S.W.2d loc. cit. 588); and "plaintiff could have seen and known of the position of the automobile in which she was seated * * * and could have warned, * * *." (273 S.W.2d loc. cit. 165). It was correctly held that these instructions, which made no reference to the degree of care required to keep a lookout, placed an absolute duty on the party concerned to know what it was possible to know or see. Instruction 1 did not submit a mere finding of "could have known or seen" and thus make defendant's liability depend upon what he could possibly have known or seen so as to impose an absolute duty. Instead it made his liability depend on a finding that he "failed to keep and maintain a careful watch and lookout ahead and laterally * * * and * * * that in so failing * * * the defendant did not exercise the highest degree of care and was negligent." It would have been clearer and better to have directly required the finding: "Failed to exercise the highest degree of

care to keep and maintain a watch and lookout ahead and laterally" and then require a finding of negligence. Nevertheless, our view is that this was the meaning of Instruction 1 and that it did not impose an absolute duty on defendant to see and know that plaintiff was in the safety zone if it was possible at all for him to so see and know that fact. We see no essential difference between this instruction and the lookout instruction held not erroneous in Moore v. Ready Mixed Concrete Co., Mo. Sup., 329 S.W.2d 14, 21. Therefore, we hold there was no prejudicial error in giving Instruction 1.

■ Instruction 5 was as follows: "The Court instructs the jury that the burden is upon the defendant to prove that plaintiff was guilty of contributory negligence by the preponderance or greater weight of the credible evidence and unless he has done so your verdict must be in favor of the plaintiff on said issue."

Defendant says as to this instruction: "The average juror could well have understood the instruction to mean that unless defendant sustained his burden of proving plaintiff guilty of contributory negligence, then a verdict in favor of plaintiff was mandatory." The instruction would have been clearer and better if it had used the word "finding" instead of the word "verdict". (See Wheeler v. Bowles, 163 Mo. 398, 408, 63 S.W. 675.) However, this was not a legally incorrect statement and the fact issues in this case were simple and clear. If the jury believed that plaintiff was standing in the safety zone as defendant approached, there could have been no contributory negligence; because the jury could have found contributory negligence only by accepting defendant's version, as submitted in Instruction 4, that plaintiff ran from the sidewalk, when defendant approached, into the right front side of his automobile. We do not believe the jury could have been confused by the use of the word "verdict" and hold this instruction was not prejudicially erroneous.

■ Instruction 6 defining the terms "negligent," and "negligence" and "highest degree of care," commenced as follows: "The Court instructs the jury that it is the duty of every operator of an automobile upon the public streets and highways of this State to exercise the highest degree of care so as not to endanger the life or limb of any person." Defendant says this was an abstract statement of law wholly unrelated to any verdict-directing instruction, was prejudicially misleading and allowed the jury to speculate on other grounds of negligence not submitted. However, this was not a verdict-directing instruction and the trial court in passing on the motion for new trial did not find it to be misleading. Therefore, in view of the simple and clear fact issues in this case hereinabove noted, we hold it was not prejudicially erroneous.

■ Defendant also contends that the verdict was grossly excessive; that this excessiveness resulted from prejudicial questions, statements and argument of plaintiff's counsel and therefore cannot be cured by remittitur; and that the court erred in permitting these statements and arguments and in refusing to declare a mistrial. However, for the reasons hereinafter stated, we do not find the verdict excessive and we consider that fact in determining the prejudicial effect of the matters raised. At the voir dire, plaintiff's counsel asked several members of the panel such questions as: "Is there anything that would force you * * * not to fully compensate this woman because it would mean returning a verdict in a very large sum of money?" and "Would you feel that we can't compensate this lady fully because if we do we will come out with a great big verdict?" and "If you found in her favor and her injuries and damages add up to a big sum, you wouldn't be afraid to award her a big sum?" and "Would you refuse to give her the full amount that she was entitled to because it would mean returning a verdict in a big sum of money?" These questions were improper on voir dire because they were argumentative,

implying an obligation to return a large verdict for plaintiff before any evidence had been heard. However, no objection was made to any of them until after one panel member was removed by the court, when in answer to the Judge's questions, after plaintiff's counsel's interrogation, she indicated there would be a limit on the amount to which she would agree even if she "felt that she was entitled to it." Defendant did not object to that action but thereafter did object to a question (similar to the previous ones) "because it implies that this lady's injuries are of such a character that entitles her to a large amount of money." The court sustained that objection. Plaintiff's counsel later asked another panel member a somewhat similar question in a different form and that objection was also sustained, whereupon defendant's counsel asked that a mistrial be declared. The court overruled that request and plaintiff's counsel said he would not ask that question any more and did not do so. (Similar questions were discussed in Moore v. Ready Mixed Concrete Co., Mo.Sup., 329 S.W.2d 14, 22, and not approved, but held not prejudicial therein because of the situation in that case and the instruction on the subject given by the court.) Under the situation in this case, we cannot hold that the court abused its discretion in refusing to declare a mistrial, after sustaining objections to the last two questions, which is the only matter preserved for our review.

■ In his opening statement, plaintiff's counsel stated her age as 61 years and said "she is a widow lady." On objection, the court reserved ruling and plaintiff's counsel continued, "Since the death of her husband, ten years ago, she has been duly employed and earned her own living." Objection to the reference to her husband's death was overruled. In his argument to the jury, plaintiff's counsel, referring to the motorman's testimony, said: "He can certainly not hope for any reward from Mrs. Goldstein; that lady hasn't got a dime." Objection to this was sustained and no further action requested. Objections were

also made and sustained to plaintiff's counsel's statements, "She has to support herself" and "Do you think she can live on Social Security when she is 65." No further action was requested after these rulings. Thus nothing is preserved for our review except the statements that plaintiff's husband had died and she was a widow. Defendant cites cases holding it is improper to make statements about plaintiff's children or relatives, such as Daniels v. Banning, Mo.Sup., 329 S.W.2d 647, 653; Meade v. Kansas City Public Service Co., Mo.Sup. 250 S.W.2d 513, 515; Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482, 484; Heibel v. Robison, Mo.App., 316 S.W.2d 238, 243. Defendant also quotes the statement concerning arousing sympathy in Taylor v. Kansas City Southern Ry. Co., 364 Mo. 693, 266 S.W.2d 732, 736, taken from Willis v. City of Browning, 161 Mo.App. 461, 464, 143 S.W. 516, 517. (In this connection we note the court gave Instruction 9 as follows: "The court instructs the jury that neither passion, prejudice nor sympathy should influence you in your deliberation, for it is your sworn duty to try the issues herein enjoined solely upon the evidence and under the instructions of the court.") Plaintiff cites Bradley v. City of Spickardsville, 90 Mo.App. 416, 423, stating: "It is also claimed it was error to allow plaintiff to prove that she was a widow. It was properly admitted by the court in relation to her right, as being a feme sole, to recover for the value of her own services." Plaintiff also cites Werner v. Chicago & Northwestern Ry. Co., 105 Wis. 300, 81 N.W. 416, 418, stating: "We perceive no error * * in allowing her (the plaintiff) to testify that she was a widow * * *. The fact that she was a widow tended to show that whatever time was lost by disability was her own." Since plaintiff sought recovery for her medical and hospital bills, as well as loss of earnings, we find no error in the court's rulings.

■ Defendant also complains of plaintiff's counsel's use, in connection with his closing argument, of a large cardboard

on which he wrote the amounts he asked the jury to award plaintiff for each of 14 claimed items of damages, totalling $77,735. Two of these items were medical and hospital bills supported by evidence ($2,200) and two were for loss of earnings, present and future, for which there was a basis for estimate. (Plaintiff was earning $50 per week.) The others were claims for definite amounts for specific injuries and results therefrom such as humiliation, suffering and pain; and obviously there was duplication in some of these items. However, the jury did not accept these claims because the verdict was for only about one-fourth of their total. Considering as we must the evidence most favorable to plaintiff, we find that plaintiff did sustain serious permanent injuries which prevent her from continuing her employment as a kosher cook at the Jewish Hospital. (Her work started at 5:30 A.M., continued for nine hours, requiring her to be on her feet, handling large pots and pans.) Plaintiff had multiple abrasions and contusions on both legs which had healed and deep cut into the muscles in the perineum which was sutured but later abcessed and had to be opened and drained before it healed. In her right leg, she had a fracture of the lower end of the femur and a piece of bone was broken off the tibia at the knee joint and she also had torn knee ligaments in which there was an inch-long calcium deposit. She cannot bend her knee more than 90 degrees and must walk with a cane. Her doctor said that she was past the healing stage, that her knee condition would not improve, and that it was a permanent injury. (Her knee remains swollen and painful; there is atrophy of her leg above the knee and demineralization.) Plaintiff also sustained a lower back strain and a fracture of the coccyx, according to her doctor, which created a condition called coccydynia. There was separation and abnormal mobility of the coccyx and plaintiff suffered and continues to suffer much pain from this condition. Treatment to relieve this pain by injecting anesthetics was not successful. Her doctor believed it could be

relieved by an operation to remove the coccyx which he thought would be successful if there were no side effects from it. Plaintiff also had aggravation of a pre-existing condition of arthritis in her knee and spine.

Plaintiff was in the hospital from June 24, 1958, until August 12, 1958, and kept the cast on her leg from toes to hip until September 2, 1958. Thereafter, she continued to come to the hospital for out-patient physiotherapy. Defendant's doctor, who examined plaintiff before the trial, called her leg bone fractures chip fractures and said, "She has not had sufficient time to get the maximum improvement." However, he said, "I wouldn't say she will make a complete recovery." He also found the coccyx condition and agreed that it was and continued to be painful. Considering the amount of plaintiff's medical and hospital expense, the probably necessary operation to relieve the coccyx condition, the permanently disabling effect of plaintiff's injuries, and loss of earnings prior to the trial and for a reasonable future period, our conclusion is that we cannot hold this verdict excessive. See Bone v. General Motors Corp., Mo.Sup., 322 S.W.2d 916; Riggs v. Metcalf, Mo.Sup., 315 S.W.2d 791; Kiger v. Terminal R. Ass'n of St. Louis, Mo.Sup., 311 S.W.2d 5; Howard v. Missouri Pac. R. Co., Mo.Sup., 295 S.W.2d 68; McCaffery v. St. Louis Public Service Co., 363 Mo. 545, 252 S.W.2d 361. As long ago as 1933, in Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S.W.2d 903, 911, we approved a verdict of $10,750 for an injury somewhat similar in disabling effect, in which hospital and medical expense and loss of earnings were not shown as in this case. Inflation and decrease in purchasing power of the dollar since that time is well recognized, often commented on and considered in our decisions in determining contentions as to excessiveness of verdicts.

■■■ While we agree with Faught v. Washam, Mo.Sup., 329 S.W.2d 588, cited by defendant, that it is improper to invite the jury to admeasure damages for pain on a mathematical formula, plaintiff's counsel herein did not make the job offer argument condemned therein, nor commit the other improprieties held therein to constitute reversible error in their totality. Futhermore, in Faught v. Washam, supra, (329 S.W.2d loc. cit. 600) there was a verdict which the court said "was not supported by the fragmentary and meager medical evidence in the record." We have held that not to be true in this case and on that basis hold the argument not prejudicially erroneous in this case. We do not go as far as the New Jersey and Pennsylvania cases cited in Faught v. Washam, supra, holding that plaintiff's counsel may not state in his argument amounts he claims would be fair and reasonable compensation for injuries shown by the evidence to have been sustained. See 88 C.J.S. Trial § 192, p. 377. Nevertheless, while we recognize that the trial court has considerable discretion in the matter of arguments of counsel, we consider it unfair and improper to permit plaintiff's counsel to do this for the first time in his closing argument, when defendant's counsel has made no argument as to amount. In Votrain v. Illinois Terminal R. Co., Mo. Sup., 268 S.W.2d 838, 844, we said: "Generally, the purpose of closing argument by counsel for the party having 'the burden of the issues' is to answer the argument of counsel for the other party, the one 'holding the negative.'" See also 88 C.J.S. Trial § 169, p. 339; Supreme Court Rule 4.22, V.A.M.R. However, in this case, defendant made no objection on that ground and all of his objections made during the closing argument were sustained except his objections to the plaintiff's counsel writing on the large cardboard his claims as to the worth of particular injuries and arguing these amounts to the jury. Because we have found the verdict is not excessive and because of the scope of defendant's objections, we hold there was no prejudicial error in connection with the argument to the jury in this case.

The judgment is affirmed.

All concur.