240 S.W.2d 732 (1951)
AMERICAN DISPLAYS
v.
E. T. SWINEY MOTORS, Inc.
No. 28035.
St. Louis Court of Appeals, Missouri.
June 19, 1951.
Rehearing Denied July 6, 1951.
*733 Arthur U. Simmons, and Ludwig Mayer, Clayton, for appellant.
Douglas H. Jones and Jones, Connell & Jones, all of St. Louis, for respondent.
BENNICK, Judge.
This is an action by plaintiff, American Displays, an advertising concern, to recover from defendant, E. T. Swiney Motors, Inc., for the erection of ten billboards advertising defendant's automobile agency located at 3435 South Kingshighway Boulevard in the City of St. Louis.
The action was in two counts, the one upon an alleged express contract for the payment by defendant of $7,200 for plaintiff's services in connection with the erection and maintenance of the billboards, and the other in quantum meruit for the recovery of a like sum as the reasonable value of plaintiff's services.
Both counts were submitted to the jury along with an instruction that plaintiff could only recover, if at all, upon one or the other of such counts, and not upon both.
The jury found for plaintiff upon the quantum meruit count and assessed plaintiff's recovery at the sum of $3,600. There was a finding for defendant upon the contract count.
Judgment was rendered in accordance with the verdict; and following an unavailing motion for a new trial, defendant gave notice of appeal, and by proper successive steps has caused the case to be transferred to this court for our review.
Defendant corporation was organized in May, 1946, and went into business at the South Kingshighway address in the latter part of 1947. Its organizer and president was E. T. Swiney, who had been engaged in the automobile business for many years prior to the formation of his own company.
On May 28, 1946, defendant entered into an agreement with one Clark S. Ross, doing business as Ross Advertising Agency, to handle its advertising and sales promotion.
The function of an advertising agency is to serve as intermediary between the advertising client and the various advertising media, such as radio, billboards, newspapers, magazines, direct mail, and the like. Such an agency operates primarily on a commission basis, and receives its commissions from whatever advertising media it employs. In this case Ross was specifically authorized to receive commissions which were to be applied to a flat monthly service fee which was to be paid him by defendant. A written contract was prepared for a term of one year, but with a provision that the relationship should continue thereafter as long as was mutually satisfactory. The written instrument was signed by Ross, but not by Swiney on behalf of defendant. In fact Ross testified that in all his dealings with Swiney he had never obtained *734 Swiney's signature to any document whatever.
Under the terms of the contract Ross agreed to present in writing all advertising copy as well as to consult and advise on all problems that came up during the conduct of the business.
According to plaintiff's evidence, Ross had a conversation with Swiney in April, 1947, during which he suggested to Swiney that arrangements be made for the erection of ten billboards in South St. Louis adjacent to his company's sales territory. These were to be of the type that become illuminated at night when the headlights of an automobile shine upon them. The question of what advertising matter should appear on the billboards was also discussed, and Swiney inquired as to the precise points where the billboards would be erected. Ross informed him that the matter of leasing the sites would be handled by plaintiff, American Displays, whereupon Swiney authorized Ross to take steps to get the ten locations.
Ross was corroborated by Lawrence A. Duncan, the president of plaintiff company, who testified that Ross had asked him for his ideas in connection with an outdoor display advertising program for defendant, and had also requested that he figure out some kind of copy that could be submitted for Swiney's consideration.
Ross then arranged with Duncan to lease ten sites at locations along highways that would be of benefit to defendant, and he was told by Duncan that the cost as of that timeApril, 1947,would be $18 per billboard per month, but that it would be necessary to start the work in the immediate future inasmuch as costs were on the increase. Ross composed the copy of the material to appear on the billboards, and Duncan, in due course, prepared a color sketch, which Ross took to Swiney, who approved it. Ross then returned the sketch to Duncan and authorized him to go ahead with the project as soon as he had secured the necessary locations. According to Duncan, the final direction to proceed with the work was given in the latter part of September, 1947.
Duncan likewise testified that in his negotiations with Ross in April, 1947, the discussion had been on the terms of $18 per billboard per month, but stated that by the time he was ordered to go ahead in the following September, costs had risen to the point that he was then compelled to inform Ross that the price would be $20 per billboard per month. Duncan expressly testified that the $20 figure was the one that was agreed to between Ross and himself. The project was to extend over a period of thirty-six months, so that the total cost at the latter figure would have been $7,200.
By January, 1948, the necessary leases had been negotiated and the ten billboards fabricated and erected, and Duncan then marked the locations on a filling station map, which he turned over to Ross, who in turn transmitted the same to Swiney on January 23, 1948.
Three contract forms had been prepared and submitted by Duncan for the convenience of the parties, one form to be kept by Swiney, another by Ross, and the third by Duncan himself. Duncan testified that the particular contract forms were delivered to Ross in the early part of October, 1947. Ross testified that he presented the forms to Swiney, who objected that the price had been put at $20 instead of $18 per billboard per month as had originally been contemplated. Later, on January 30, 1948, after the work had been completed, Ross took three more contract forms to Swiney, who again objected because of the increase in price. Bills were then sent each month for a period of five months, and when payment was refused, the billboards were taken down and this action instituted.
Contradicting much of the evidence that had been given by both Duncan and Ross, Swiney testified that he had never had any discussion with Ross about billboard advertising until after the ten billboards in question had been erected and the contract offered for his acceptance in January, 1948. He denied that Ross had been authorized to contract with Duncan for the erection of the billboards, and he likewise denied that he had been shown a color sketch of the advertising matter that was to appear upon *735 the billboards. He testified that the price of $20 per billboard per month was more than the volume of his business would have warranted him in paying for such medium of advertising, and that he so advised Ross at the time of his rejection of the proposed contract. He of course admitted the existence of the contract between his company and Ross by which Ross was employed to handle his company's advertising, but he insisted that in the performance of such contract Ross had no authority to make any agreement for specific advertising without first securing his approval.
Preliminary to a consideration of the case on the merits, defendant complains of the submission of the case by two instructions for plaintiff, one on the theory of express contract, and the other on the theory of quantum meruit. It contends that plaintiff should have been required to make an election between the two theories before the submission of the case, and that the effect of the course pursued by the court was to permit the jury to make an election which had been primarily the duty of plaintiff itself.
It has long been the settled rule that when a plaintiff, as in this case, has but a single cause of action which may be stated in different ways so as to meet different phases of the evidence as the same may possibly develop at the trial, he may state such cause of action in different counts, and cannot be compelled to elect upon which count or theory he will proceed. Brinkman v. Hunter, 73 Mo. 172; Dayton Folding Box Co. v. Danciger, 161 Mo.App. 640, 143 S.W. 855; Globe Light & Heat Co. v. Doud, 47 Mo.App. 439. Plaintiff was therefore entitled to have his case submitted upon both theories but with a cautionary instruction that he could only recover upon the one or the other; and nothing contained in the new code has affected the propriety of this long-accepted method of procedure.
The fundamental question in the case is whether there was evidence entitling plaintiff to recover upon the theory of quantum meruit. This question arises upon the claim of error in refusing defendant's motion for a directed verdict and in submitting the theory of recovery in quantum meruit by plaintiff's instruction No. 4. There is of course no question involved of plaintiff's right to recover upon the theory of an express contract, since the jury found for defendant upon that issue.
The case presents a proper basis for plaintiff's recovery in quantum meruit. It need hardly be stated that in determining this question the evidence is to be viewed most favorably to plaintiff, except as certain portions of it have been resolved in defendant's favor by the jury's adverse finding upon the issue of an express contract. It was shown that Ross was defendant's duly constituted agent to handle its advertising, save only that he was required to present all advertising copy to defendant and consult and advise with defendant on all problems that arose. When Ross took up with Swiney the matter of arranging for the erection of the ten billboards, Swiney authorized him to take steps to get the necessary locations. When Ross submitted Duncan's color sketch to Swiney, the latter approved it. In other words, according to plaintiff's evidence, there was a complete meeting of the minds upon all essential features of the proposed project except as to the compensation plaintiff should receive, which had apparently never had Swiney's approval. In a situation such as this the law implies a promise on defendant's part to pay the reasonable value of plaintiff's services, and the recovery in quantum meruit was fully supported by the evidence. Christine v. Luyties, 280 Mo. 416, 430, 217 S.W. 55, 60; Swift v. Johnson, 175 Mo.App. 660, 665, 158 S.W. 96; 71 C.J. 83; 58 Am.Jur., Work and Labor, sec. 39.
For its next point defendant complains of the scope taken by plaintiff's counsel in the cross-examination of Swiney while he was on the stand as its principal witness.
At the very beginning of Swiney's cross-examination it was brought out that he had left St. Louis for Oklahoma City in March, 1944, and that prior to his leaving he had been connected with the Shearer Chevrolet agency in St. Louis as general *736 manager. He was then asked whether the time of his leaving was when Shearer went to the penitentiary. He promptly answered in the negative, and defendant's counsel then followed with an objection to the question and a request for a mistrial. The court sustained the objection, but overruled the motion for a mistrial.
At a later stage in the examination some discussion arose as to the practice of automobile concerns in making use of advertising even when the immediate volume of business might not appear to justify it, and Swiney was asked if Shearer had not continued to sell automobiles the whole time he was in jail. Again defendant's counsel objected and asked for a mistrial, and again the court sustained the objection, but denied a mistrial.
It is axiomatic that the limit to which cross-examination shall be permitted to go is a matter reposing largely within the discretion of the trial court. Generally speaking, a rather wide latitude is allowed. However the cross-examination of a witness should not be extended to purely collateral, irrelevant, or immaterial matters, and especially so if the effect would be to prejudice the minds of the jurors; nor does it justify the introduction of incompetent evidence that it happens to be elicited on cross-examination.
In bringing out the fact that Swiney's former associate had served a term in the penitentiary, it is difficult to conceive of any purpose on the part of plaintiff's counsel other than to prejudice the jury against Swiney, although there was nothing to suggest that Swiney had had any part in Shearer's unidentified criminal act. Furthermore the reference to the matter was all the more calculated to be harmful since the issue in the case at bar was primarily one of credibility between Swiney on the one hand and Ross on the other. However the saving circumstance is the fact that the court unequivocally sustained the objection to the question and thereby put the stamp of its solemn disapproval upon such line of inquiry. It indulged in no hesitation when it was called upon to rule, but immediately declared the impropriety of such interrogation. In other words, the court exercised its discretion, and exercised it in defendant's favor. To what length it should go was a matter it alone could best determine from what it was in a position to observe of any harm that had been done. It concluded that the episode could be corrected by a firm admonition to the jury to disregard the question, and that the occasion did not call for the granting of a mistrial. Unless we could clearly say that the court abused its discretion in refusing a mistrial, there would be no warrant for our interference; and the record discloses no such situation.
Finally defendant makes the point that the verdict of $3,600 was excessive.
This is a case where plaintiff fully performed its obligation to prepare, fabricate, and erect the billboards. It is true that the billboards were only left up five months, but that, under plaintiff's evidence, was because of defendant's repudiation of its undertaking. The evidence disclosed that plaintiff was actually out of pocket in the sum of $2,692.68. Adding to this the reasonable value of the charge for the five months that the billboards were actually on display, and the result would be something in the close neighborhood of the amount which the jury awarded. The verdict was supported by the evidence, and accords with the principles of law by which the jury were to be governed in assessing plaintiff's recovery in quantum meruit.
It follows that the judgment rendered by the circuit court should be affirmed, and it is so ordered.
ANDERSON, P. J., and McCULLEN, J., concur.