**Fred D. BLUM and Katheryn M. Blum, Plaintiffs-Appellants,**

v.

**Ernest B. WILKINSON, Defendant-Respondent.**

**No. 57690.**

Supreme Court of Missouri, Division No. 1.

May 13, 1974.

John C. Russell, Raytown, for plaintiffs-appellants.

Walter R. Simpson, Kansas City, for respondent; Sheridan, Sanders, Carr, White & Mason, Kansas City, of counsel.

WELBORN, Commissioner.

Action for personal injuries, arising out of automobile collision. Katheryn M. Blum sued Ernest Wilkinson for $35,000 damages for her injuries. Her husband joined in the action, seeking $7,500 damages on account of his wife's injuries and $750 damages to his auto which his wife was driving. Wilkinson counterclaimed against Mrs. Blum for $10,000 damages for his injuries and $500 damages to his automobile. A jury returned a verdict in favor of defendant on his counterclaim and awarded him damages of $1,000 for personal injuries and $425 property damage. Plaintiffs appealed by notice of appeal filed prior to January 1, 1972.

The collision occurred shortly after 7:30 A.M., April 22, 1970, a sunny day. The site of the incident was on Route OO in Lafayette County, 2.2 miles west of Route M–131. Route OO was a blacktop road, with a paved surface 21 feet in width and narrow shoulders. The pavement was dry. The center line of the roadway was not marked. Mrs. Blum was driving east on OO, on her way to work in Odessa. She crested a hill and saw Mr. Wilkinson's automobile approaching in a westerly direction, coming up the hill, near the bottom of the incline. According to Mrs. Blum, the Wilkinson auto was on her side of the road. She applied her brakes and turned to the right. "I * * * had my brakes on and I was pulled to the right and this

gravel was soft and I thought it was pulling me towards the * * * ditch, and I turned it sharply to the left and I lost control of it, then." Then the collision occurred, at the center of the road, according to Mrs. Blum.

Mr. Wilkinson, who was alone in his automobile, testified that he saw Mrs. Blum's car coming straight down the hill, swaying a little to the right and "just right now it happened." He said he thought he was on his side of the road all the way along.

The vehicles stopped after the collision in the westbound lane, with the front wheels on the north shoulder. The Blum auto was damaged primarily on the front and right side. The Wilkinson vehicle sustained damages to the front and left side.

Trooper Drunert of the State Highway Patrol, who was called to the accident, found 135 feet of skid marks beginning in the eastbound lane. The right wheel ran off to the right side and then cut back across and slid crossways into the westbound lane. 17 feet of skid marks were found in the westbound lane, leading to the Wilkinson vehicle. The left wheel mark was approximately 1½ feet to the right of the center of the roadway.

The claim of plaintiffs and defendant's counterclaim were submitted solely on a charge that the other was negligent in driving on the wrong side of the road and a contributory negligence instruction on the same grounds was given on behalf of Mrs. Blum and defendant.

The jury returned the following verdict:

"We, the Jury, find the issues in favor of the Defendant and assess defendant's damages as follows—

"Personal Injuries $1,000.00

"Property Damage    425.00"

■ On this appeal, appellants' first contention is that the trial court erred in permitting the investigating patrolman to reproduce on a sheet of paper the diagram he had drawn for his report of the accident and which showed the skid marks observed by him and this location with regard to the center of the roadway. Appellants objected to the introduction into evidence of the resulting sketch and attack the court's overruling this objection on the grounds that the exhibit "was incompetent, irrelevant and immaterial and highly prejudicial to Appellants."

The trial court did not err. The exhibit was nothing more than a diagram of the skid marks as observed by the trooper at the scene of the accident. His prior oral description related to what he had observed and the diagram served only to make the oral testimony more easily understood. The diagram essentially corresponded with the photographs put in evidence by plaintiffs of the scene of the accident. The photographs show the tire marks at the scene. The diagram did nothing more than show the length of the marks as measured by the trooper and testified to by him. Furthermore the diagram was entirely consistent with Mrs. Blum's version of the occurrence, except that it shows her skid marks crossing the center of the highway. Again, plaintiffs' photographic evidence showed that fact.

■ The copying of the diagram from the patrol report did not affect its admissibility. Certainly the tracing did not cause the copy to be hearsay, as appellants complain. The report depicted what the trooper observed at the scene, not what someone told him. The copying did not alter the basic nature of the evidence.

The trial court did not err in overruling appellants' objection to the exhibit. Martin v. Sloan, 377 S.W.2d 252, 263[15, 16] (Mo.1964).

■ The second assignment of error relates to a claim of misconduct on the part of two jurors. Plaintiffs' motion for new trial alleged misconduct on the part of two jurors in talking to an attorney with whom plaintiffs had discussed the accident, but

whom they had not employed to represent them. The claim was supported by an affidavit of the plaintiffs as the court held a hearing on the allegation. Mr. and Mrs. Blum testified that they had discussed the accident with Mr. Warren Sherman, an attorney, and he had obtained a copy of the accident report, but there had been a falling out or misunderstanding and they did not employ Sherman to represent them. They testified that during a recess on the first day of the trial they saw Sherman talking to two women jurors in the courtroom for five or ten minutes, saw him talking to the same women and one of the jury men in the hall during a recess for four or five minutes, saw Sherman talking for five or ten minutes to the same two women jurors during lunch in a restaurant on both the first and second day of the trial. At no time did either of them hear what was said in the conversation.

Mr. Sherman testified that he knew some of the jurors and spoke to them, but he denied that he discussed the Blum case, made any mention to them of his acquaintance with the Blums or his early connection with the case. One woman juror testified that Sherman came by the table where she was eating lunch and spoke to another juror who was with her. She said they merely "exchanged the time of day." Another woman juror testified that she knew Sherman and spoke to him before the trial began. Both denied any discussion of the case with Sherman or anyone else not a member of the jury.

"The granting of a new trial on the ground of misconduct by or affecting jurors rests largely in the discretion of the trial court." Brady v. St. Louis Public Service Co., 361 Mo. 148, 233 S.W.2d 841, 843[2, 3] (1950). No abuse of discretion appears in this case. There is no evidence of improper influence upon the jury in the contacts between Mr. Sherman and the jurors. See Sunset Acres Motel, Inc. v. Jacobs, 336 S.W.2d 473, 479 (Mo.1960). Therefore, there is no basis for a finding by the court that the trial court abused its discretion in overruling the motion for new trial on this ground.

Appellants finally contend that they should be granted a new trial because the verdict dealt only with the respondent's counterclaim and failed to make a finding on appellants' claims. Forms of verdict were given the jury covering all possible verdicts, including one for use in the event the jury should find that neither party should recover from the other. The instruction did not require that a separate verdict be returned on plaintiffs' claims and defendant's counterclaim. No objection was raised when the verdict was returned. Plaintiffs did raise the question in their motion for new trial.

As above stated, the sole issue submitted to the jury was which party was on the wrong side of the road. The jury's verdict was, therefore, in effect a finding that Mrs. Blum drove on the wrong side of the road and that Mr. Wilkinson did not. In order to find for defendant on his counterclaim, the jury were required, under defendant's verdict-director on his counterclaim and plaintiffs' contributory negligence instruction on defendant's counterclaim, to so find. Such a finding necessarily precluded a finding in favor of plaintiffs. Therefore, the verdict was "necessarily decisive" of the whole case and was adequate basis for a judgment in favor of defendant on his counterclaim and against plaintiffs on their claims. Staples v. Dent, 220 S.W.2d 791, 792[1, 2] (Mo. App.1949); Ragsdale v. Young, 215 S.W. 2d 514, 516–517[2] (Mo.App.1948); Rozen v. Grattan, 369 S.W.2d 882, 886–888[6] (Mo.App.1963).

Johnson v. Hunter, 398 S.W.2d 449 (Mo.App.1965), relied upon by appellants, is not here applicable. In that case, a jury, contrary to the court's instructions that a verdict in favor of plaintiff must be against both defendants, who stood in an employer-employee relationship, returned a verdict against the employer and exonerated the employee. The court held that such

a verdict was prejudicial error as to the employer because it was contrary to the court's instruction. Here, the instruction perhaps did not make clear the necessity of separate verdicts, but the verdict is not contrary to the court's instructions and did effectively dispose of the issues.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.