**Noel U. CANTRELL, Plaintiff-Appellant,**

v.

**SUPERIOR LOAN CORPORATION, L. F. Sweaney, B. J. Lockwood, William Black, Executor of the Estate of David Black, Defendants-Respondents.**

**No. 40132.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 27, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 18, 1980.

Application to Transfer Denied
Sept. 9, 1980.

628

**632**

Raymond R. Roberts, V. Kenneth Rohrer, Roberts, Roberts & Rohrer, Farmington, for plaintiff-appellant.

Richard D. Moore, Moore & Brill, West Plains, for L. F. Sweaney.

J. Lee Purcell, Glenn E. Easley, Hyde, Purcell, Wilhoit, Edmundson & Merrell, Poplar Bluff, for B. J. Lockwood.

Robert A. McIlrath, Mike Maynard, McIlrath & Maynard, Flat River, for William Black, Executor of Estate of David Black.

SNYDER, Presiding Judge.

This is an action for damages for fraudulent misrepresentation brought by Noel Cantrell against Superior Loan Corporation, L. F. Sweaney, B. J. Lockwood and William Black, executor of the estate of David Black, deceased, former St. Francois County Probate Judge. Cantrell alleges he was induced to invest $141,000 in the Superior Loan Corporation because he relied upon the false and fraudulent representations of Sweaney, Lockwood and David Black. There was a jury verdict in favor of all the defendants, Cantrell's motion for a new trial was denied and he appealed from the resulting judgment.

Appellant contends the court erred in allowing certain testimony and part of an opening statement, and by refusing to receive as evidence two exhibits offered by the appellant. Specifically, he alleges the trial court erred in: (1) permitting testimony concerning collateral transactions, evidence of which was irrelevant, and allowing impeachment of appellant by permitting inadmissible testimony concerning appellant's reputation; (2) permitting cross-examination of appellant about unrelated lawsuits and deed of trust transactions, and receiving in evidence appellant's answers to a request for admissions concerning lawsuits and loan transactions to which appellant was a party; (3) permitting respondent Sweaney in his opening statement to refer to his "moderate income," "savings" and "hard work," and to refer to appellant in derogatory terms in connection with business transactions, evidence of which was irrelevant; (4) permitting evidence of offers of compromise; (5) permitting references to respondent Sweaney's caring for "widows," "the elderly" and "destitute"; (6) refusing to receive in evidence appellant's Exhibit No. 25, an adjusted balance sheet prepared by appellant's expert witness; (7) refusing to admit into evidence appellant's Exhibit No. 22, a newspaper which should have been admitted as part of the res gestae or, in the alternative, under the curative admissibility doctrine; and (8) permitting respondent Sweaney's suggestion on voir dire that the jurors should put themselves in the position of Sweaney and his wife. Appellant asserts that the cumulative effect of the trial errors was to prejudice the jury against appellant.

Respondents Sweaney, Lockwood and Black argue that the trial court did not err in any of its rulings. In addition, they assert the trial court ruled properly in denying appellant's motion for a new trial, because he failed to make a submissible case against each of them. Respondent Black also argues that appellant's evidence of his conversation with the deceased Judge Black is inadmissible because of the Dead Man's Statute, § 419.010, RSMo 1978.

The facts will be stated in the light most favorable to the appellant in determining whether a submissible case was made. Additional facts will be related as required in discussion of the issues briefed by the parties.

Appellant is a retired farmer living in Marquand, Missouri. Respondent Superior Loan Corporation was a small loan corporation which was declared bankrupt in 1975. Its main office was in Poplar Bluff, Missouri. Respondent Sweaney was elected a director of Superior Loan in February 1966. Respondent Lockwood was Superior's vice president and supervisor of all its branch offices except the one in St. Louis. Respondent William Black is the executor of the estate of Judge David Black who was elected a director of Superior on February 16, 1968.

Appellant testified that he was in the St. Francois County courthouse in Farmington on May 3, 1968, with his wife, Glenda, when he was approached by Judge Black who introduced himself to them, told them that he had heard Cantrell had cashed in some mutual funds and he, Judge Black, knew of one of the better investments in the State of Missouri. He told appellant the Superior Loan Corporation was in excellent financial condition, was earning over 20 percent profit on its money, had income of over $100,000 a year on the sale of credit life insurance and had sufficient assets to cover its securities. Judge Black said that the common stock had a value of $3 per share, and that Superior sold subordinated debenture bonds paying 8 percent interest which were a safe investment. When appellant asked him about Superior's collections, Judge Black said collections were good and there was no delinquency problem. Judge Black told appellant further that if he invested by May 10 the corporation would date his debenture bond as of May 1 and he would draw interest as of that date.

The next day appellant drove from his residence in Marquand, Missouri to the Superior Loan office in Poplar Bluff, a distance of 70 miles, where he spoke with respondent Lockwood, who told him that the corporation was in excellent financial condition, earned 20 percent on its money and had income of over $100,000 a year from the sale of insurance. When appellant asked about the corporation's collection experience, Lockwood said that collections were good. Lockwood asked appellant how much he was planning to invest in Superior and appellant told him that if he could confirm what he had been told he would invest about $100,000. Lockwood also told appellant that if he put his money in by the tenth of May, "[W]e'll date it back to May 1." Appellant asked Lockwood about respondent Sweaney, whom he had known some years before and who had once mentioned to Cantrell an investment with Superior. Lockwood told appellant that respondent Sweaney had large investments in Superior and was satisfied with them.

Appellant then drove to Sweaney's home in Thayer, a distance of 78 miles from Poplar Bluff. Meanwhile, Lockwood telephoned Sweaney to tell him appellant was interested in investing in Superior and was on the way to visit Sweaney.

Sweaney told appellant that the corporation was in good financial shape and was "sound as a rock," that collections were excellent, that the common stock had a value of over $6 per share and that it was the best investment he had ever made. Sweaney showed appellant a receipt book for sales of Superior securities Sweaney had made. He offered to give appellant a financial statement of the Superior but appellant refused it, stating that he could not read it.

On May 6, appellant drove from Marquand to Poplar Bluff again to speak with George Kneibert, who was president of Su-

perior Loan at that time. He is now deceased and not a party to this litigation. He told appellant that the corporation was in sound financial condition, earned 27.9 percent on its money, and that collections were excellent and if appellant invested his money by May 10 his debenture would be dated and draw interest as of the first of the month.

On May 8, appellant returned to the Superior office in Poplar Bluff, where Kneibert again assured him that the corporation's collections were good. Appellant invested $105,000 in an 8 percent subordinated capital debenture. Appellant later purchased more of these debentures, the last on February 10, 1969, until his total investment in them was $141,000. Appellant became a director of the corporation on July 10, 1968, after he had purchased 350 shares of Superior's common stock at $3 a share. He remained on the board until June 1, 1970, when he resigned after he was refused access to the corporation's books and records.

Superior stopped paying interest on the subordinated debentures in 1970, went into common law receivership in 1971 or 1972 and finally declared bankruptcy in 1975. Appellant received $15,220.68 from the trustee in bankruptcy as his share of the available assets.

Appellant adduced evidence that Superior had sustained losses in 1966, 1967 and the first three months of 1968. There was also expert testimony that the balance sheets of the corporation did not accurately reflect the true financial condition of the corporation, because generally accepted accounting principles were not followed in preparing the statements, particularly as the principles applied to the write-off of bad debts and the transfer of unearned income from assets to the income account. . There was expert testimony on behalf of the appellant that as of April 30, 1968, $641,796.42 of a total of $2,261,312.19 in loans should have been written off as worthless. The average delinquency of the worthless loans was 40.2 months. An additional $133,854.20 in loans were questionable, all being delinquent

more than 90 days with only one payment having been received in the last 10 months. There was also evidence that the reported income of $100,000 per year from the sale of insurance was not net income, but gross income before the deduction of expenses, and that in fact the company was operating at a loss at the time appellant made his investment and had been for at least two years before.

All three of the individual respondents raise the issue that appellant failed to make a submissible case of fraud. In determining whether a submissible case has been made, the court must consider the evidence in the light most favorable to the plaintiff and must disregard the evidence of a defendant to the extent that it does not aid the plaintiff's case. *Sydney v. Coca-Cola Co.*, 569 S.W.2d 11, 13[5] (Mo.App.1978).

Appellant's burden in making a submissible case on the issue of fraud is a heavy one. "Fraud of course is never to be presumed; and before evidence may be taken as reasonably supporting an inference of fraud, it must rise above mere suspicion and point logically and convincingly to that conclusion." *Hunter v. Roberts*, 267 S.W.2d 368, 372[3–4] (Mo.App.1954). This standard must be considered in the determination of whether appellant has proven all the elements necessary to establish respondents' fraud. These elements are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his ignorance of the truth; (5) the speaker's intent that his statement be acted upon; (6) the hearer's ignorance of the falsity of the statement; (7) his reliance on the truth of the statement; (8) the hearer's right to rely on the statement; and (9) the hearer's consequent and proximate injury." *Teal v. Lee*, 506 S.W.2d 492, 496[2] (Mo.App.1974). Proof of each element is essential to a submissible case, and failure to prove any element is fatal to recovery. *Schnuck v. Kriegshauser*, 371 S.W.2d 242, 248[4–7] (Mo. 1963). But the court is mindful that:

" 'Fraud is rarely * susceptible of positive proof,' . . . and that fraud may be established by a showing of facts and

circumstances from which it reasonably and fairly may be inferred. [Citations omitted]. But, it is equally true that, . . . a finding of fraud must rest on something more substantial than suspicion, surmise and speculation [citations omitted]."

*Glaze v. Glaze*, 311 S.W.2d 575, 578–579[4–6] (Mo.App.1958).

Respondents do not argue that elements of representation, falsity, materiality, lack of hearer's knowledge, and injury are not present here. There is adequate support in the record to find these satisfied. They do, however, contend that they did not and could not have known that the statements were false; that they had no intent to deceive appellant; and that appellant did not rely, nor did he have a right to rely, on the representations made by them. This court finds that there was sufficient evidence to make a submissible case of fraud against all the respondents.

The case against each respondent must be analyzed separately. Respondent Sweaney does not question the evidence as to most of the elements of fraud, but claims that no submissible case was made as to him because there was no proof that he knew his statements were false or that appellant relied on Sweaney's statements.

■ Sweaney had been a member of the board of directors since 1966, and he had heard discussed at nearly every board meeting from that time to the time appellant made his investment that there were collection problems in the St. Louis office of Superior. The corporation lost money each year that Sweaney was on the board of directors. In the December 1966 meeting a loss of $40,907.84 was reported through the month of September. A loss of $25,844.00 through May 1967 was reported in a June 1967 board meeting. Losses of $12,896.00 in June and $4,767.00 in July 1967 were reported at an August 1967 board meeting. A loss of $29,444.00 for the first quarter of 1968 was reported in an April 30, 1968 board meeting. Respondent Sweaney attended all of these board meetings. It was four days after the April 30, 1968 meeting

that Sweaney talked to appellant about the financial condition of the company. In addition, Sweaney was present at meetings in December of 1966 and 1967 when unearned income was unjustifiably transferred to earned income over the objection of the corporation's accountant. There was sufficient evidence that Sweaney knew his statements were false.

■ Respondent Lockwood does not state in his brief wherein and why appellant failed to make a submissible case, but argues either that Lockwood's statements were not false or that he did not know they were false. Because he did not attend the directors' meetings and did not have access to financial statements, there was no evidence that he knew that the corporation was not financially sound. However, he also told appellant that collections were good, and that Superior made over $100,000 a year from the sale of insurance alone. At that time, he knew collections were poor in St. Louis. Moreover, because he compiled the insurance reports for the corporation and referred to those reports in speaking with appellant, he should have known that the $100,000 insurance income he referred to was not net income. Although Lockwood had an explanation of his statements, it is not for this court to weigh his testimony. It is merely decided that a submissible case was made as to Lockwood's knowledge of the representations as to insurance sales and loan collections.

■ Respondent Black also does not tell the court in detail wherein and why appellant failed to make a submissible case against Judge Black. Judge Black attended the directors' meeting on April 30, 1968, just four days before he talked to appellant, and in that meeting it was reported that the corporation had lost $29,444.00 during the first three months of 1968. This knowledge is sufficient to show that he should have known his statements concerning the excellent financial condition of the corporation and the worth of its securities were false.

All three respondents contend that appellant did not rely upon their statements because he did not invest immediately after speaking with them, but visited Kneibert twice and checked the corporation's financial condition. Appellant testified at trial that he told the president, "Mr. Kneibert, if you'll shake my hand on the truth I've been told by these people [Black, Sweaney and Lockwood], I'll put one hundred and five thousand dollars in your company." He stated that if Kneibert had refused to shake his hand, "I have my doubts whether he'd got dollar one."

■ Respondents assert that this statement indicates that Cantrell relied on Kneibert's representations rather than theirs. It is not necessary, of course, that the respondents' allegations be the sole inducement to invest in order for reliance to be present. It is sufficient if the assertions were a material factor in Cantrell's decision to invest his money in Superior. *Jeck v. O'Meara*, 343 Mo. 559, 122 S.W.2d 897, 903[7–9] (1938); *Weston v. American Nat. Assur. Co.*, 32 S.W.2d 789, 791–792[7–8] (Mo.App.1930).

■ It is true that the final inducement to invest was Kneibert's handshake. Yet the handshake was merely a means of verifying what Black, Sweaney and Lockwood had told appellant. In such a situation it is absurd to say that Cantrell relied on a handshake and not on the statements which were the basis of the handshake.

Respondents argue further that by speaking with Kneibert, Cantrell made an independent investigation of the company's finances. In support of their claim, they cite *Bayer v. American Mutual Casualty Company*, 359 S.W.2d 748 (Mo.1962). In *Bayer*, the plaintiffs asked the corporation's president if the company was in a good financial state and were told, " ' "Yes," it was an operating company at that time.' " *Id.*, 750. Before investing in the company, the plaintiffs also spoke with a bank officer and a representative of the Missouri Insurance Department about the company. The court held first, there was no proof the statement of the company president was false and

second, plaintiffs did not rely on the president's representations, but had made an independent investigation of the company's status, and must be held to have relied upon that.

■ Respondents' reliance on *Bayer* is misplaced. *Bayer* is distinguishable on its facts; in this case appellant did not seek the advice of outside parties. He spoke only with the corporation's president and asked him to confirm what the others had said. Although Kneibert's statements are not binding on the respondents, the conversations with Kneibert cannot be said to constitute an independent investigation. Kneibert presided over the corporation stockholders' and directors' meetings. He was so closely involved with Superior, and had such an interest in appellant's investment, that it would not be reasonably possible for appellant to learn the true condition of Superior from speaking with him. Under such circumstances it cannot be said that appellant relied only on Kneibert's representations and not on those of respondents.

■ Finally, respondents Sweaney and Lockwood claim that appellant did not adduce evidence to show he had a right to rely on their statements, because he was offered a copy of the financial report by Sweaney and refused it. Appellant could have easily protected himself but failed to do so, it is argued, and therefore he is barred from recovery.

The rule in Missouri is that:

"[I]f one trusts to representations not calculated to impress a person of ordinary prudence, or neglects means of information within easy reach, he should suffer the consequences. [Citations omitted]. But such rule has no application where a distinct and specific representation is made to be acted upon or for the purpose of inducing action and which has induced action."

*Cantley v. Plattner*, 228 Mo.App. 411, 67 S.W.2d 125, 130–131[6–12] (1934). In this connection, the court must look to whether "the representation is of such character as

to induce and does induce action,· . . . ."
*Id.*, 67 S.W.2d 131[13].

The trend in modern decisions is to require less diligence, rather than more, in persons to whom representations are made, and to condemn the falsehood of the person making the representation, rather than the credulity of his victim. *Monsanto Chemical Works v. American Zinc, Lead & Smelting Co.*, 253 S.W. 1006, 1009[5] (Mo.1923).

■ Appellant's right to rely on the representations, then, depends on the intent and the strength of respondents' representations to him.

" 'The proposition has now become very widely accepted at law as well as in equity, at least as general doctrine, that a man may act upon a positive representation of fact notwithstanding the fact that the means of knowledge were specially open to him.' "

*Tietjens v. General Motors Corporation*, 418 S.W.2d 75, 82[4] (Mo.1967), citing *Cottrill v. Crum*, 100 Mo. 397, 13 S.W. 753, 755 (1890). The circumstances surrounding the transaction must be viewed, as well as the representations themselves. The question is thus whether Cantrell should " 'at least have consulted the sources of information to which the other party referred him, or, conversely, whether a representation had the effect of inducing the person to whom it was made to forgo an investigation * * *.' " *Tietjens, supra*, 83, citing 24 Am.Jur. 143, Fraud and Deceit, § 296.

■ Many of the representations made by respondents were emphatic—i. e., "[the] company is as sound as a rock," "[the] common stock is worth three dollars a share" and "collections are . . . good." Sweaney said the collections were excellent.

Judge Black was a director of the company, and according to appellant's evidence approached appellant and solicited his investment in the debentures. Respondent Sweaney was a director of the corporation, an investor in its debentures and had been an agent for the sale of the notes and debentures of the corporation in his home town of Thayer. Respondent Lockwood was vice president of the corporation and the manager of all the corporation's offices except the one in St. Louis. They were individuals whose positions would induce others to believe in and rely on their knowledge of the corporation's financial condition.

The unaudited financial report which was offered to appellant and which he refused to examine would not have helped him. The evidence was that it contained misleading information as to the assets of the company and the income account, which had been inflated by a transfer of unearned income not in accord with generally accepted accounting principles. The statement showed a loss, to be sure, but the amount of the loss incurred was reduced substantially by the unwarranted transfer. There was enough evidence to satisfy the element of the appellant's right to rely on the representations to establish a submissible case.

Next, appellant's points relied on will. be discussed individually.

Appellant raises three separate legal questions concerning the evidence of collateral transactions which he has to some degree failed to separate in his argument. The first concerns evidence adduced for impeachment purposes; the second, evidence of collateral transactions whose relevance he questions; and the third, reputation evidence. The three questions will be discussed in turn.

Appellant complains about allowing direct testimony from Sweaney and witnesses Todd, Short, Goad, Clark, Bruckerhoff and Crawford concerning collateral transactions for impeachment purposes, because, as appellant alleges, a witness may not be impeached by introduction into evidence of direct testimony on collateral matters. The direct testimony questioned relates to business transactions between appellant and the witnesses, details of which were denied on cross-examination by appellant. This court agrees that the trial court erred in permitting the challenged testimony.

■ When a witness is asked on cross-examination about a particular fact not material to the issue for the purpose of

impeaching him, his answer concludes the cross-examination and he cannot be contradicted by other evidence. *Switzer v. Switzer*, 373 S.W.2d 930, 939[13–17] (Mo.1964); *Frechin v. Thorton*, 326 S.W.2d 122, 125–126[1] (Mo.1959); *Weaver v. Scofield*, 198 S.W.2d 240, 242[1] (Mo.App.1946).

It is not clear from the briefs whether the testimony of the challenged witnesses was brought out to impeach Cantrell, because he had denied the transactions on cross-examination or because the transactions were relevant to the facts in this case. However, no matter how the issue is presented the testimony of witnesses Short, Goad and Todd was collateral, not relevant and therefore inadmissible.

John Short testified that, when he purchased a farm from Cantrell in 1963, Cantrell would not discuss the transaction while Short had a witness present, and that he had needlessly required Short to travel from southeast Missouri to West Plains, a distance of 110 miles, five times prior to a consummation of the sale.

Claude Goad testified that Cantrell, whom he had known for five to six years, had bragged to him that he was "smart," and that Cantrell had discovered an error in a deed of trust out of which a lawsuit between Goad and Cantrell arose.

Charles Todd testified that he had borrowed money from Cantrell to purchase a farm in April 1958, nineteen years prior to the trial, and that he had been required to purchase six heifers at above the market price, so as to *increase Cantrell's rate of return to 20 percent on the real estate loan*, well above the 8 percent legal usury limit at that time.

Respondents claim that all of the above testimony of Short, Goad and Todd is relevant and material to the issue of whether appellant relied on respondent's representations and whether he had a right to rely on these representations. The respondents cite *Hanson v. Acceptance Finance Co.*, 270 S.W.2d 143 (Mo.App.1954) for the proposition that the courts must consider the nature of the transaction, the form and the materiality of the representation, the relation of the parties, the respective intelligence, experience, age and mental and physical condition of the parties and the respective knowledge and means of knowledge of the parties. Respondents assert that this evidence went to appellant's business experience and thus was competent evidence on the issue of appellant's right to rely.

However, none of the transactions testified to was similar enough to appellant's investment in Superior Loan to influence his reliance on the representations made to him. Nor was witness Crawford's testimony that appellant attempted to loan him money at an unspecified time in the past relevant. The specific testimony of Sweaney and witness Bruckerhoff to which appellant objected as being irrelevant was not delineated in his brief. If offered at retrial it should be ruled on at that time depending on its relevance and materiality to the issue of reliance of appellant on the representations of respondents.

The trial court likewise erred in overruling appellant's objection to the evidence of appellant's reputation given by witnesses Barton and Crawford. Appellant's claim of error was not directed to the admission of reputation testimony as such, but to the inadequate foundation laid for the testimony. He argued correctly that the reputation testimony of Barton and Crawford was untimely and related to a place of residence distant from appellant's present community.

Roy Crawford was a farmer who had lived in Thayer, Missouri, since 1937 and had known Noel Cantrell since 1925. In response to the following question: "Are you acquainted with his [Cantrell's] general reputation made up as to the people in the community, say about him being a shrewd and aggressive businessman?", Crawford responded, "Yes . . . he's an aggressive businessman . . . .."

Waymon Barton, the Recorder of Deeds and Circuit Clerk of Oregon County for 15 years, testified that he had known Cantrell for 20 to 25 years. He testified he had seen

Cantrell on numerous occasions, sometimes with his former wife, come into the recorder's office at Alton to go through the records. Barton testified that Cantrell had a reputation as a shrewd, aggressive businessman.

The rule in Missouri formerly was that reputation evidence for purposes of impeachment could go to reputation of moral character as well as truth and veracity, *State v. Grant*, 79 Mo. 113 (1883). However, more recent cases have limited impeachment by reputation evidence to a showing of reputation for truth and veracity and specifically prohibited reputation of moral character. *State v. Lane*, 371 S.W.2d 261, 265[5] (Mo.1963); *State v. Williams*, 337 Mo. 884, 87 S.W.2d 175, 180[9] (1935).

■ There is no definite rule as to the community which must be referred to by a witness giving reputation evidence. It can be the place where the subject of the testimony resides, or where he does business, but the testimony must be reasonably close in time to the incidents which are the subject of the lawsuit; the witness must have had an opportunity to observe continuously and with some frequency the person whose reputation he describes; and the witness must also have knowledge of how others in the community view the individual. *Ulrich v. Chicago, B. & Q. R. Co.*, 281 Mo. 697, 220 S.W. 682, 685–686[4] (banc 1920); *State v. Bugg*, 316 Mo. 581, 292 S.W. 49, 50[3] (1927).

■ Appellant had lived in Marquand, Missouri, in Madison County for ten years prior to the trial. In the absence of any showing to the contrary, it is proper to confine reputation evidence to the witness's neighborhood of residence. *Ulrich v. Chicago B. & Q. R. Co.*, supra 220 S.W. 685–686[4]. Neither Crawford nor Barton put any time reference in their testimony concerning appellant, other than to say how long they had known him. Under the holdings in *Ulrich* and *Johnson v. Martindale*, 288 S.W. 970, 971[3] (Mo.App.1926), reputation evidence from a former community is admissible only upon a showing of a present connection with the community. Apparently, appellant had not lived in Thayer, Missouri, since 1942. Amanda Clark testified that it may have been at least 20 years since appellant lived there. Crawford made no attempt to tie appellant to Thayer within recent years.

Barton testified that he had seen appellant with his former wife in Oregon County. However, she died prior to 1966, so that Barton can tie appellant to Oregon County only ten years or more prior to trial. Although there was evidence that appellant had some connection with Oregon County in lawsuits and deed of trust transactions, the time and scope of this connection was never made clear. As a result, appellant's point on reputation evidence is well taken.

■ Appellant also challenges the trial court's rulings in permitting Sweaney's counsel to cross-examine appellant about irrelevant, immaterial and collateral matters. Unfortunately, appellant does not cite in his brief any specific questions which were objected to during the cross-examination, but speaks only generally of improper cross-examination, except for one reference to cross-examination of appellant concerning a transaction with Charles Todd. No objection was raised to either the question or the answer concerning Mr. Todd, and therefore this point was not preserved for appellate review.

Appellant asserts next that the trial court prejudicially erred and abused its discretion by allowing respondent Lockwood to cross-examine appellant about unrelated lawsuits and deed of trust transactions, and by receiving in evidence respondent Lockwood's Exhibits D, E and F, consisting of respondents' request for admissions about the lawsuits and transactions, a list of transactions attached to the request for admissions and appellant's answers to the request. Appellant argues the request for admissions concerned irrelevant and immaterial matters which were of no probative value.

The subject matter of the request for admissions was nine lawsuits in which appellant was a party and 50 loan transactions in which appellant was the lender. The dates for all the lawsuits were not given

but there was one in 1953, one in 1961, three in 1962 and one in 1968. The subject matter of the lawsuits is not shown in the request for admissions. The lending transactions began in 1947 and ended in 1962 except for two loans, one of which was made in 1966 and the other in 1971.

Appellant objected to the request for admissions when it was submitted, and asked for a protective order, but his objections were overruled and his request for a protective order denied. The request was made by respondents Lockwood and Black subject to objections to admissibility made during the trial; appellant objected at the time they were offered in evidence, and preserved the error in his motion for a new trial. It was error to permit the receipt of evidence of the lawsuits in which appellant was a litigant; and it was error to receive in evidence the details of all the loans made by appellant through the years beginning in 1947. Therefore, it was error to receive in evidence and allow the jury to examine respondent Lockwood's Exhibits D, E and F.

■ First the lawsuits will be considered. The business experience of appellant is relevant to the issues in this cause. However, respondents made no attempt to establish any connection between the issues in these nine lawsuits and business experience, but argue that business experience can be inferred from appellant's having appeared as a party in nine lawsuits. There are no reported Missouri cases involving this exact factual pattern, nor have any been cited or found from any other jurisdiction.

■ However, there are Missouri cases in which cross-examination of a party concerning prior litigation has been raised as error. These cases hold that if the issues or facts of prior litigation are relevant to the issues in the current case, then the evidence of prior lawsuits may be received. However absent that showing, or a showing of a history of fraudulent suits, it is prejudicial error to admit evidence of a party's participation in prior lawsuits. *Dietz v. Southern Pac. Ry. Co.*, 225 Mo.App. 39, 28 S.W.2d 395 (1930); *Cammarata v. Payton*, 316 S.W.2d 474 (Mo.1958).

A jury verdict in favor of defendant was reversed and the cause remanded for a new trial because of error in allowing the cross-examination of plaintiff about prior claims and lawsuits in *Dietz, supra*. The *Dietz* court cited with approval *Palmeric v. Manhattan Ry. Co.*, 133 N.Y. 261, 30 N.E. 1001 (1892), in which the Court of Appeals of New York held that the offer of the defendant railway company, to show that the plaintiff was a habitual litigant, was properly excluded. The court in *Dietz* concluded by stating, "[I]t was error of the gravest sort for the court to allow plaintiff to be cross-examined about his claims and suits in the past," absent a showing of a history of fraudulent suits. *Id.*, 28 S.W.2d 397. Taking advantage of any right which the law gives is not discreditable. *Shull v. Kallauner*, 222 Mo.App. 64, 300 S.W. 554, 555[2] (1927).

In *State ex rel. Williams v. Vardeman*, 422 S.W.2d 400, 408[19–20] (Mo.App.1967), a trial court was prohibited from compelling the plaintiff, in a personal injury action, to answer the following interrogatory: " '[H]ave you ever made a claim or filed any suit for damages of any kind or character, . . . at any time?' ", finding the scope of the question too broad, and restricting the question to suits or claims for personal injuries only. *Id.*, 408.

■ There was no showing by respondents that the facts or issues in appellant's prior lawsuits were relevant to the issues in the case under review. Therefore, it was prejudicial error to allow cross-examination about, or evidence of, the lawsuits.

The evidence of the 50 loan transactions which the trial court allowed to be received over the objections of appellant presents a more difficult problem. A list of the loan transactions showing the dates, the names of the borrowers, the amount borrowed and the security was attached to the request for admissions submitted to appellant and, after appellant's motion to strike the request for admissions was denied, appellant admit-

ted that he had engaged in the listed transactions. At trial respondent Lockwood was permitted to cross-examine appellant about certain of the transactions over appellant's objection and, again over appellant's objection, was permitted to introduce in evidence Exhibit E, the list of loan transactions attached to the request for admissions. Respondents argue that the evidence was properly allowed to show that appellant had no right to rely upon their representations because he was a knowledgeable businessman who should have investigated Superior Loan more thoroughly before he made his investment.

The application of the law to the facts of this case is difficult. See *Cantley v. Plattner, supra.* A line must be drawn between allowing respondents to bring in evidence of appellant's business experience as it relates to the issues in the case under review and refusing evidence of collateral transactions which are not relevant and material, and which may tend to prejudice the jury against appellant unfairly.

A trial court is vested with broad discretion in determining the extent of cross-examination. *Krez v. Mickel*, 431 S.W.2d 213, 215[2, 3] (Mo.1968); *Cash v. Bolle*, 423 S.W.2d 743, 746[3] (Mo. banc 1968). Alleged misrepresentations in the sale of land were the subject of the litigation in *Busse v. White*, 302 Mo. 672, 259 S.W. 458 (1924). The court there said,

"[I]t was *competent* for defendants to show that plaintiffs were farmers, had examined and bought or traded for other lands in other localities, in order to show their *general* knowledge of real estate values; but the question as to what they *paid* for any *particular* land, or *sold it for*, lying outside of Calloway county, was not material and should have been excluded, as it was not in the neighborhood of the land in controversy. [Court's own emphasis.]"

*Id.*, 259 S.W. 461–462[4]. Similarly, here, it would be competent for respondents to show appellant's general business knowledge but not details of transactions or lawsuits unless the transactions or lawsuits were factually similar to the Superior Loan transaction. It is a "general rule that it is improper to admit testimony relative to the financial status of parties to a lawsuit except when relevant to the issues joined." *Bremen Bank & Trust Co. v. Bogdan*, 498 S.W.2d 306, 312[5] (Mo.App.1973).

Because it was error to receive in evidence Exhibits D, E and F, it was also error to permit cross-examination about the transactions named in them. Although the trial court is vested with considerable discretion in permitting cross-examination, it should not be extended to collateral, irrelevant or immaterial matters. *Wills v. Townes Cadillac-Oldsmobile, Incorporated*, 490 S.W.2d 257, 263[7] (Mo.1973); *American Displays v. E. T. Swiney Motors*, 240 S.W.2d 732, 736[6–8] (Mo.App.1951).

On retrial respondents' counsel should be permitted to cross-examine appellant in general terms about his business experience for a reasonable time prior to May of 1968. Cross-examination on specific transactions should be limited to those which are so factually similar to appellant's investment in Superior Loan that they can be said to affect his right to rely on the representations which were made to him. The trial judge will exercise his discretion in determining the relevancy and materiality of the evidence as it is presented.

Appellant charged the trial court with abuse of discretion in allowing respondent Sweaney's counsel in his opening statement to refer to certain collateral transactions and to respondent Sweaney's "moderate income," "savings" and "hard work."

A trial judge has broad discretion in ruling on objections to what is said in opening statements and his discretion is subject to review by an appellate court only when abused to the prejudice of the party complaining. *Vaeth v. Gegg*, 486 S.W.2d 625, 629–630[15] (Mo.1972).

What has been said about the relevance of collateral transactions, loans and lawsuits disposes also of this point as it relates to those matters. An opening statement is permitted for the purpose of ac-

quainting the court and the jury with the facts which a party intends to prove when the witnesses are called and should not include prejudicial facts which are plainly inadmissible. *State v. Chester*, 445 S.W.2d 393, 399[10] (Mo.App.1969); *Vosevich v. Doro, Ltd.*, 536 S.W.2d 752, 759[9] (Mo.App. 1976). Inasmuch as the admission of evidence of the collateral transactions, loans and lawsuits has been held to be error, it was error to permit respondent Sweaney to refer to them in his opening statement.

 Respondent Sweaney's counsel's references in his opening statement to Sweaney's moderate income, savings and hard work arguably could relate to appellant's punitive damages prayer, and the trial court did not abuse its considerable discretion when it overruled appellant's objection to this part of the opening statement.

Appellant then alleges that it was error to allow testimony of his offer of compromise and settlement made before suit was filed. Appellant's June 20, 1970 letter to Sweaney about which appellant was cross-examined over objection of counsel reads:

"Dear Les,

I was in Cape Girardeau yesterday to talk to my attorney. If some arrangements are not made for my security, I will have to file suit. You have said that you will not cash your debentures, so if you will assign them ($65,500) over to me without recourse for the same amount of my debentures without recourse I will release you and your wife of any personal obligations to me if I file suit. I would receipt you to this effect. I would still have $10,000 more in debentures than you. I am sure this transaction would not affect the sale of the company.

Les, since we have been good friends for many years, I just wanted to give you another opportunity to work out of this bad position. Since you are an old director I think this would be a good plan for you.

If you would decide to do this, I think we should have Mr. Grimm to take care of the transactions.

I would like to hear from you immediately about this matter."

Appellant had spoken with Sweaney a week before at Sweaney's house indicating that unless they swapped debentures, Sweaney would be sued. "Such negotiations for a peaceful settlement are to be encouraged, and, in event they fail, testimony with reference thereto should be excluded on a trial of the cause." *Starnes v. St. Joseph Railway, Light, Heat & Power Co.*, 331 Mo. 44, 52 S.W.2d 852, 855[5] (1932); *Jacobs v. Danciger*, 344 Mo. 1042, 130 S.W.2d 588, 592[6] (1939). *Kelsey v. Kelsey*, 329 S.W.2d 272, 274[4–5] (Mo.App. 1959).

Counsel for respondents agree with the general rule, but seize upon the word "peaceful" in the *Danciger* opinion and allege that Cantrell's statements amounted to threats and duress and do not come within the rule.

 The conversation between appellant and Sweaney and references to the letter written by appellant were inadmissible. There was nothing non-peaceful about the offer. Appellant made an offer to release Sweaney from any suit against the board of directors and Superior Loan Corporation in return for an exchange of debentures. Sweaney chose not to do so, but, in any event, his refusal does not take it outside the rule.

 It was error for the trial court to allow statements in evidence that Sweaney was concerned to "save the people that invested like widowed women and elderly people." Appellant's objections were overruled when Sweaney so testified on direct examination, and again when witness Bruckerhoff testified that, "Sweaney offered to leave his debentures in for the reason that he wanted to save the company, the people and widows and . . . who were destitute . . . . ." Missouri courts have long condemned such sympathy provoking references. *Willis v. City of Browning*, 161 Mo.App. 461, 464, 143 S.W. 516, 517[3–4] (1912). The references to respondent Sweaney's concern for widows and destitute persons was obviously made to evoke sympathy for Sweaney in the minds

of the jury. Respondent argues that if the trial court's ruling were error it was not prejudicial. Although standing alone, this error may not have been of such prejudicial effect as to justify a remand, the testimony should not be permitted upon retrial.

██ Appellant next charged that it was prejudicial error for the trial court to refuse to allow appellant's Exhibit 25 to be received in evidence. Exhibit 25 was a fictitious balance sheet prepared by witness John Wright, a certified public accountant, who had examined Superior Loan's accounting records. The exhibit was based on a balance sheet prepared by Superior Loan's accountant but adjusted by witness Wright to reflect the application of generally accepted accounting principles. In particular, Wright testified, a total of $641,796.42 in accounts should have been written off as worthless. The balance sheet offered as an exhibit was adjusted to reflect the write-off.

The trial court refused to admit Exhibit 25, which was offered as an aid to understanding Wright's testimony. It was not an abuse of discretion to refuse the exhibit.

██ It is a general rule that it is within the trial court's discretion to permit a witness to illustrate or explain his testimony by the use of maps, diagrams or charts in order to communicate complicated or confusing information to a jury. 98 C.J.S. Witnesses § 327, page 28; *Blum v. Wilkinson*, 509 S.W.2d 6 (Mo.1974); *State ex rel. State Highway Commission v. Hill*, 373 S.W.2d 666 (Mo.App.1963).

██ When the use of such articles would not assist the jury to better understand the testimony of the witness, the court may in its discretion refuse to admit an exhibit. 98 C.J.S. Witnesses § 327, pages 29-30. The trial judge was in a better position to evaluate whether the jury would benefit from a view of the exhibit. His discretion was not abused.

Appellant next claims the trial court erred in refusing to receive in evidence appellant's Exhibit 22, a copy of a newspaper which he says was given him by witness Clark. The offer was made in rebuttal to Mrs. Clark's accusation that appellant was guilty of suborning perjury. The exhibit was properly refused.

By deposition, Mrs. Clark testified that appellant had asked her to swear in court that respondent Sweaney had forced her and her husband to buy, or talked them into buying, a debenture in Superior. She told appellant that Sweaney had not done this, but said appellant told her if she would testify in that way, he would get her money for her.

Appellant's evidence was to the contrary and he offered Exhibit 22 to prove his version of the events. He testified that Mrs. Clark had given him the newspaper, accused Superior Loan Corporation of being a bunch of crooks and wished him the best of luck. The newspaper contained a very critical account of some of the activities of Superior Loan and its officials, but did not mention any of the respondents. When it was offered in evidence respondents' objections based on relevancy were sustained.

The newspaper article obviously was hearsay. Appellant argues that the exhibit was relevant and should have been received in evidence as an exception to the hearsay rule as part of the res gestae, or alternatively, under the curative admissibility doctrine, to rebut the improper cross-examination of appellant by Sweaney.

Appellant cites *Kelley v. Hudson*, 407 S.W.2d 553 (Mo.App.1966) in support of his argument that he should be allowed to introduce evidence of the entire transaction or conversation with Mrs. Clark as an exception to the hearsay rule because respondent Sweaney introduced the portion of it which was advantageous to him. *Kelley v. Hudson* speaks only to conversations and not to documentary evidence. There was no objection to appellant's version of his conversation with Mrs. Clark. *Kelley* is not authority for admission of the exhibit.

██ In addition the curative admissibility doctrine can be invoked only if the cross-examination of appellant about his purported attempt to get Mrs. Clark to testify

falsely was improper cross-examination. *Watson v. Landvatter*, 517 S.W.2d 117, 122[8–9] (Mo.banc 1974). Even if it were proper cross-examination, this rule cannot be utilized by appellants, as it is used only to refute adverse inferences created by irrelevant evidence.

A witness may properly be interrogated as to attempts to tamper with, or influence, other witnesses for purposes of impeachment for interest and bias. *Strahl v. Turner*, 310 S.W.2d 833, 844[15] (Mo. 1958); *State v. Preslar*, 318 Mo. 679, 300 S.W. 687 (1927); 98 C.J.S. Witnesses § 560p, pages 515–516. Thus the cross-examination of appellant as to this issue was proper and the curative admissibility doctrine could not be invoked. Further, the use of curative evidence rests within the sound discretion of the trial court. *Cato v. Modglin*, 545 S.W.2d 307, 312[14–15] (Mo. App.1976).

Writings are admissible as part of the res gestae given the proper circumstances, *Negley B. Calvin, Inc. v. Cornet*, 427 S.W.2d 741, 743–744[2] (Mo.App.1968), but again the admissibility is a matter of discretion for the trial court. *Hamilton v. Missouri Petroleum Products Co.*, 438 S.W.2d 197, 199[1] (Mo.1969). Exhibit 22 was not admissible as part of the res gestae under the circumstances of this case.

The trial court found that the contents of the exhibit were irrelevant, and indeed the newspaper article did not mention any of the respondents; but regardless of relevancy, the trial court's ruling must be affirmed because Exhibit 22 was hearsay and inadmissible under any exception to the hearsay rule. This point is ruled against appellant.

Appellant also complains about a suggestion by respondent Sweaney on voir dire that the jury should put themselves in the position of Sweaney and his wife. Sweaney concedes that his question as originally phrased was improper. It is unnecessary to speak to this point as the problem should not arise on retrial.

One final point made by respondent Black must be resolved. Respondent Black asserts appellant's evidence of his conversations with Judge Black is inadmissible because of the Dead Man's Statute, § 491.010, RSMo 1978.

Under the first proviso of the Dead Man's Statute, appellant is precluded from testifying in his own behalf only to such acts and transactions which Judge Black, could, if living, have denied. *Swon v. Huddleston*, 282 S.W.2d 18, 27[12–15] (Mo. 1955); *Birdsong v. Estate of Ladwig*, 314 S.W.2d 471, 475[1-3] (Mo.App.1958). Only the alleged conversations of appellant with Judge Black would be proscribed under the first proviso. The second proviso of the Dead Man's Statute completely disqualifying appellant when an administrator is a party, as is the case here, is only applicable to contract actions. *Grimm v. Gargis*, 303 S.W.2d 43, 50–51[12] (Mo.1957); *Freeman v. Berberich*, 332 Mo. 831, 60 S.W.2d 393 (1933).

Appellant contends that the estate, by propounding requests for admissions to him, waived his incompetency under the act. Although no Missouri cases speak to requests for admissions, it has been held that a party waives the other's incompetency by taking depositions, *Edwards v. Durham*, 346 S.W.2d 90, 97[2] (Mo.1961) and interrogatories, *Watkins v. Watkins*, 397 S.W.2d 603, 611[9–10] (Mo.1965); *Lehr v. Moll*, 247 S.W.2d 686, 690[6] (Mo.1952).

However, this issue was resolved by *Saupe v. Kertz*, 523 S.W.2d 826, 831[8] (Mo. banc 1975). In *Saupe*, the plaintiff alleged that the administrator waived the protection of the Dead Man's Statute by filing a motion to produce plaintiff's medical and employment records. The court rejected this contention by stating at page 831:

"Since the fact appears to be that defendant's decedent had no knowledge of the records sought and, therefore, could not have testified about them had he lived, these records were not matters about which plaintiff was incompetent to testify. Hence, the motion to produce did not constitute a waiver of plaintiff's incompetency to testify . . . ."

There, as here, the request for admissions touching upon appellant's previous history of litigation, did not deal with any transactions, acts or events about which David Black had any knowledge. Therefore, the estate's request for admissions did not waive the incompetency of appellant.

 Although appellant's testimony as to conversations with David Black must be excluded in a new trial for purposes of determining whether or not a submissible case was made against Black by the appellant, the record reveals that appellant's wife was present at all times during the conversations with Judge Black and testified to the identical facts testified to by her husband. Because she was not a party to the litigation, her testimony does not fall within the prohibition of the Dead Man's Statute. *Cantrell v. Sheppard*, 247 S.W.2d 872, 874[1] (Mo.App.1952); *McCutchan v. Kansas City Life Insur. Co.*, 122 S.W.2d 59, 70[11–12] (Mo.App.1938). Therefore, in spite of appellant's incompetency to testify, a submissible case against respondent Black was made by Mrs. Cantrell's testimony.

Under the first proviso of the Dead Man's Statute, which applies to tort actions as well as contract actions, appellant should be excluded from testifying upon retrial concerning his conversation with Judge Black, the decedent. He is incompetent to the extent that his testimony might be subject to question by Black if Black were alive.

The judgment is reversed and the cause remanded for a new trial as to all defendants.

SMITH and PUDLOWSKI, JJ., concur.